Edward F. Baker *vs.* William J. Horan & another.

Suffolk.     March 26, 1917. — June 25, 1917.

Present: Rugg, C. J., Braley, De Courcy, Crosby, & Pierce, JJ.

*Landlord and Tenant,* Covenants.   *Evidence,* Materiality.

Where, in a lease of a building for a term of five years, beginning June 1, 1910, the lessee covenanted that he would "during the said term . . . pay all taxes beginning with the taxes of 1910 . . . which may be payable either by landlord or tenant," he must pay taxes assessed on April 1, 1915, the clause "beginning with the taxes of 1910," while it showed an intention to include the taxes for 1910, not showing an intention to exclude the taxes for 1915, which were assessed during the term of the lease.

In the same lease the lessee acknowledged "that the said premises including . . . machinery, elevator, electric motor . . . are now in first class condition," and covenanted "to keep all and singular the premises in such repair, order and condition as the same are in at the commencement of said term, and make all repairs, replacements and improvements of whatever nature," including repairs to the elevator, electric motor and any other machinery, and that no use should be made of the premises "which shall be unlawful, improper, noisy, or offensive, or contrary to any law of the Commonwealth, or ordinance . . . for the time being in force of the city." Nine days before the end of the term of the lease the building commissioner of the city, acting under St. 1913, c. 806, § 4, served upon the lessor a notice calling attention to the fact that an inspection of the premises showed a violation of the building laws in certain specified particulars relating to the elevator, and notifying the owner "to correct the violation and abate the nuisance at once." The lessor showed the notice to the lessee. Some of the things required to be done by the commissioner, which would not have been necessary except for the requirements of the commissioner, the lessee refused to do, and the lessor did them and sought in an action of contract to compel the lessee to pay therefor. *Held,* that the lessor was entitled to recover,

since under St. 1907, c. 550, § 132, as amended by St. 1913, c. 586, § 2, noncompliance with the commissioner's requirements was maintaining a nuisance, which the lessee had covenanted that he would not do.

At the trial of the above action, on the question whether the lessee should be required to pay the tax assessed for 1915, evidence offered by the lessee tending to show that properties are assessed in Boston as of April 1, 1915, that assessors' valuation lists are not completed until sometime in June or July and the rate is not figured nor the tax bills made up until about October 1, and that not until then is there an opportunity to pay. "or as a matter of custom has it ever happened that any taxes are paid," was *held* to be inadmissible.

CONTRACT, upon certain covenants in a lease by the plaintiff to the defendants of a building on Canal Street in Boston. Writ dated October 4, 1915.

The action was referred to an auditor under a rule which provided that his findings of fact should be final.

The material provisions of the lease were as follows:

"The Lessees during the continuance of this lease, at their own expense are to keep all and singular the premises in such repair, order and condition as the same are in at the commencement of said term, and make all repairs, replacements and improvements of whatever nature, inside and outside of the building, or on the demised premises, the elevator, boiler, steam, water or gas piping, electric motor, or any other machinery or fixtures in said building, damage by fire or other unavoidable casualty excepted but this exception shall not limit the liability of the lessees as to damage caused by water coming in to the cellar or drain pipes or plumbing as aforesaid. . . ."

"The Lessees hereby acknowledge that the said premises including steam, water or gas piping, machinery, elevator, electric motor, boiler and fixtures are now in first class condition. . . .

"And the Lessees do hereby, both individually and severally covenant with the Lessor that the Lessees during the said term and for such further time as they or any other person or persons claiming under them shall hold the said premises or any part thereof, will pay unto the Lessor the said rent at the times, and in the manner aforesaid (except as hereinafter provided), and will keep all and singular the said premises including machinery, elevator, motor, boiler and fixtures in such repair, order and condition as the same are in at the commencement of said term, or may be put in during the continuance thereof reasonable use and wearing thereof and damage by fire or other unavoidable casualty

only excepted and further agree that they will pay all taxes beginning with the taxes of 1910 and assessments of every description which may be payable either by landlord or tenant, promptly when due, whether assessed by the City of Boston or the Commonwealth of Massachusetts, and to pay taxes if any assessed on the interest of the mortgagee in said premises, the taxes to be paid by the lessees hereunder, but not including assessments, to be assessed on a valuation not exceeding the total assessed value of the property, and will pay all charges for water; . . . and will peaceably yield up to the Lessor the said premises, and all erections and additions made to or upon the same, in good repair, order and condition in all respects, reasonable use and wearing thereof and damage by fire or other unavoidable casualty excepted; . . . and no trade or occupation shall be carried on upon the said premises, or use made thereof which shall be unlawful, improper, noisy, or offensive, or contrary to any law of the Commonwealth or ordinance or by-law for the time being in force, of the city or town in which the premises are situated, or injuries to any person or property; . . ."

Among other findings of the auditor were the following:

"The elevator in the building in question originally was used as a combination passenger and freight elevator, but since the occupancy of the defendants under the lease of June 1, 1910, they used it for freight purposes only. . . .

"I find that, at the time the notice was received from the building commissioner, the elevator was deficient in the particulars specified in such notice; and that the prices paid by the plaintiff, who had had a long experience in the care of numerous properties and the charge of repairs connected therewith, for the work and materials comprised in the various items of such list were fair and reasonable. . . .

"Item 5 is for 'grill work top of elevator, winding armature and other work on elevator, $110.00.' The elevator originally had an overhead platform or covering of grille-work on the top which had become broken and was partially removed during the tenancy of the defendants. The work charged for in this item was for replacing such covering, for re-winding the armature in order to reduce the speed of the elevator, which was excessive, for renewing the shoes, which are made of iron and are the guides at the bottom of the elevator which hold it in place while travelling up

and down, and for general work in repairing and placing the elevator in condition to conform to the requirements of the elevator regulations previously mentioned. The defendants had a contract with the firm which did the work for the plaintiff, by which the firm inspected the elevator weekly and made the ordinary adjustments and necessary repairs in the proper maintenance of the elevator, and, after the receipt of the notice from the building commissioner to the plaintiff previously mentioned, the defendants employed the firm to do a large amount of work, which included the last three items enumerated in such notice, namely, straightening the drum shaft, overhauling the machine, and changing the shipper rope to the inside of the car. The things done and charged for by the plaintiff were those which the defendants neglected or refused to do. It is agreed that the sum of five dollars included in this item is for work done on other premises and should be deducted. I therefore allow this item for the sum of $105.

"Item 6 is for 'repairs to controller and installing light in car, $28.80.' Of this amount the sum of $11 was for repairs to the controller, which is part of the machinery that runs the car, after the termination of the tenancy and after the defendants had made all the repairs that were necessary to put the elevator in a good running condition, and it is agreed that this sum should be deducted. The balance of the item, namely $17.80, was for installing a light in the car, which was made necessary by the elevator regulations, and I therefore allow this item for the sum of $17.80. . . .

"Item 8 is for 'installing light in machine room, $14.00.' There was no light in the machine room prior to this time, and the installation of this light was required by the elevator regulations. I therefore allow this item. . . .

"Item 14 is for 'covering with sheet iron the four slide elevator doors, $16.00.' These were the grille-work doors which were so covered with sheet iron in order to make them fire-proof. I allow this item. . . .

"Items 5, 6, 8 and 14, amounting, as allowed, to the sum of $152.80, represent work which it would not have been necessary to do during the term of the defendants' lease if it had not been for the requirements of the notice from the building commissioner; and all evidence that the work was done because of such requirements was admitted against the objection of the defendants."

"The defendants offered to prove 'that the properties are assessed in Boston as of April 1, 1915, and that the assessors then make up their lists and valuations and complete them sometime during the summer in June or July, and that the State tax, and if there is a county tax, the taxes other than the city tax, are sent into the city budget which is added to them, and that the rate is then figured on the amount of money that must be raised for all taxes that are to be paid, and with the valuation of the properties in accordance with the assessors' lists that tax rate is figured, and then the tax bills are made up, and up to that time, which is about October 1, there is no opportunity to pay, or as a matter of custom has it ever happened that any taxes are paid, in the city of Boston before this time.' The plaintiff objected to this offer of proof as immaterial, and I excluded it."

The plaintiff moved for judgment upon the auditor's report. The motion was heard by *Lawton*, J., who denied certain requests of the defendants for rulings, described in the opinion, and ordered judgment for the plaintiff in the sum of $2,141.43; and the defendants alleged exceptions, and also filed an "appeal . . . from the decision, order or judgment of the Superior Court in ordering judgment for the plaintiff." No judgment for the plaintiff was entered.

*H. F. R. Dolan,* for the defendants.

*W. M. Noble,* for the plaintiff, submitted a brief.

DE COURCY, J. By an indenture made the first day of June 1910, the plaintiff demised to the defendants a building on Canal Street, Boston, for the term of five years. In the lease the defendants "agree that they will pay all taxes beginning with the taxes of 1910 and assessments of every description which may be payable either by landlord or tenant, promptly when due, whether assessed by the City of Boston or the Commonwealth of Massachusetts." The plaintiff seeks, under the first count in his declaration, to recover the amount of the taxes assessed upon the leased premises for the year 1915.

The language of the covenant, "during the said term" to "pay all taxes," includes within its scope taxes which are assessed during the term of the lease, even though not payable until a date subsequent to the end of the term. The assessment when completed, relates back to the first of April, and creates a lien upon

the premises as of that date. *Wilkinson* v. *Libbey,* 1 Allen, 375. *Amory* v. *Melvin,* 112 Mass. 83. *Richardson* v. *Gordon,* 188 Mass. 279. *Welch* v. *Phillips,* 224 Mass. 267. Under this long established construction the defendants are liable for the 1915 tax. The clause "beginning with the taxes of 1910" presumably made them liable for the 1910 tax, for which otherwise they would not be responsible. See *Wilkinson* v. *Libbey,* 1 Allen, 375, 376. It does not show an intention to relieve the lessees from the burden of the 1915 tax, which is the only one in question.

The second count is based on the covenant as to repairs. The defendants plainly are liable for all the items that were allowed by the auditor, with the possible exception of those numbered 5, 6, 8 and 14. The defendants contend that they are not responsible for these four items, amounting to $152.80, on the ground that they represent work done by the plaintiff in compliance with the notice from the building commissioner. This notice was dated May 21, 1915, prior to the termination of the lease. It called attention to the fact that an inspection of the premises showed a violation of the building laws in certain specified particulars relating to the elevator, and notified the owner "to correct the violation and abate the nuisance at once." The four requirements in the notice which the lessees refused to comply with, and which were performed by the plaintiff, embraced the replacing of the broken grillwork top of the elevator, a re-winding of the armature to reduce excessive speed, renewal of the car shoes, the installing of a light in the car and another in the machine room, and the covering of the landing doors with sheet iron to make them fireproof. See St. 1913, c. 806, § 4; St. 1907, c. 550, § 132, as amended by St. 1913, c. 586, § 2.

The lessees had covenanted "to keep all and singular the premises in such repair, order and condition as the same are in at the commencement of said term, and make all repairs, replacements and improvements of whatever nature" including the elevator, electric motor, and any other machinery or fixtures in the building; and to yield up the premises "in good repair, order and condition in all respects, reasonable use and wearing thereof and damage by fire or other unavoidable casualty excepted." They further had agreed that no use should be made of the premises "which shall be unlawful, improper, noisy, or offensive, or contrary to any law

of the Commonwealth, or ordinance . . . for the time being in force, of the city." The auditor found that the elevator was deficient in the particulars specified in the notice of the building commissioner, and that the prices paid by the plaintiff for the work and materials were fair and reasonable. It would seem that independently of the notice it was the legal duty of the defendants to do some of the work in question, because rendered necessary in the ordinary course of occupation, such as the replacing of the elevator covering, which had become broken and was partially removed during their tenancy.

But assuming that it would not have been necessary to do any of this work during the term except for the legal requirements of the building commissioner, yet these changes became necessary for the lawful use of the elevator. Under the statute relative to buildings in the city of Boston, St. 1907, c. 550, which was in force when the lease was executed, and since, it was provided (§ 38) that such elevator shaft openings should be furnished with metal-covered or incombustible doors; and that the commissioner might require additional safeguards which in his judgment were demanded. By § 132, any structure maintained in violation of the provisions of the statute is "deemed a common nuisance;" and whoever maintains any structure or any part thereof in violation of any provision of the statute is punishable by a fine. See also St. 1913, c. 586, § 2, and c. 806. By using the elevator without making the changes under consideration the defendants were making an unlawful use of the premises. By reason of their failure to abate the nuisance before the lease expired the landlord was compelled to do so; but the express terms of the lease imposed upon them the expense of making those reasonable repairs and improvements which were required for the lawful, tenantable use of the premises. *Taylor* v. *Finnigan,* 189 Mass. 568. *Lumiansky* v. *Tessier,* 213 Mass. 182. *Barnett* v. *Clark,* 225 Mass. 185.

The defendants have not argued the exceptions taken to the admission of evidence before the auditor, whose findings of fact were made final by the rule. See R. L. c. 165, § 55, as amended by St. 1914, c. 576, § 2. Assuming that these questions are open to the defendants under their requests for rulings, it may be said that the notice of the building commissioner, which was objected to, was called to the attention of the defendants by the plaintiff

before the expiration of the lease, and virtually was embodied in the conversation between the parties; and at the hearing on the motion to re-commit the auditor's report it was made a part of the report by consent of the parties. That the work in question was done because of the requirements of that notice is now relied upon by the defendants themselves. No question of the formal proof of the laws and ordinances involved was raised by the hearing.

The evidence offered relative to the assessment and payment of taxes in Boston was immaterial. *Amory* v. *Melvin,* 112 Mass. 83, 87.

It follows that there was no reversible error in refusing the requests for rulings and that the judgment for the plaintiff was ordered rightly.

*Exceptions overruled.*
*Appeal dismissed.*