[Civ. No. 2365.   First Appellate District.—April 25, 1918.]

WILLIAM C. OSBORN, Respondent, v. HENRY COWELL LIME AND CEMENT COMPANY (a Corporation), Appellant.

[Civ. No. 2366.   First Appellate District.—April 25, 1918.]

J. T. LONG, as Administrator, etc., et al., Respondents, v. HENRY COWELL LIME AND CEMENT COMPANY (a Corporation), Appellant.

LANDLORD AND TENANT—SIGN PRIVILEGE—ROOF OF ENTIRE BUILDING—CONSTRUCTION OF LEASE.—An agreement to lease a one-story building with the exception of the space leased to a third party as a saloon, "lessees to have the exclusive right to the roof for sign space, for which privilege they agreed to keep the roof in good order and repair," includes the space on the roof over the saloon.

ID.—ACTION FOR BREACH—INTERPRETATION OF AGREEMENT—STATEMENTS INADMISSIBLE.—In an action by the lessees against the owner for failure to execute the lease in accordance with such agreement, evidence of conversations between the lessee of the saloon and the plaintiffs, wherein the former had told the latter that his lease included sign privileges over the saloon, was properly disallowed.

ID.—DEMAND FOR LEASE.—Where it was plain that a demand for the execution of the lease in accordance with the agreement would have been futile, no demand on the part of plaintiffs was necessary.

ID.—FURNISHING OF SATISFACTORY BONDSMEN—MATURITY OF OBLIGATION.—Where, under such an agreement, the plaintiffs were to furnish satisfactory bondsmen as security for the performance of the covenants of the lease, the obligation to do so did not ripen until the defendant was ready to execute the lease in accordance with the agreement.

ID.—RESCISSION OF ENTIRE CONTRACT—RIGHT OF LESSEES.—Under such an agreement, the refusal of the owner to execute a lease for the entire roof justified a rescission of the whole contract.

ID.—RECOVERY OF BROKER'S COMMISSIONS — FAILURE TO ENTER INTO SATISFACTORY LEASE—DEFENSE NOT MAINTAINABLE.—In an action by brokers for their commission for negotiating such a lease, the owner will not be heard to say that a satisfactory lease was not entered into.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Mastick & Partridge, for Appellant.

Walter H. Linforth, and Leo Kaufmann, for Respondents.

BEASLY, J., *pro tem.*—The above-entitled cases are here upon the same transcript and were argued in the same briefs.

The case of Long et al. against the Cement Company will be considered first.

The defendant, Henry Cowell Lime and Cement Company, agreed to execute a lease to J. O. Long and Herman Wobber of a certain piece of property situated between Sacramento, Market, East, and Commercial Streets, in the city of San Francisco, and the agreement to execute this lease contained the following provisions, namely: The company agreed to lease to Long and Wobber "that certain one story and basement reinforced concrete building to be erected on that certain lot owned by the Henry Cowell Lime and Cement Co., situated on Sacramento, Market, East and Commercial streets, with the exception of the space leased to J. Welsh as a saloon, as outlined in yellow on a certain blue-print floor plan revised July 7, 1913, and marked 'Exhibit A' and attached hereto and made a part hereof." This agreement contained the following further provision: "Lessees to have the exclusive right to the roof for sign space, for which privilege they agree to keep the roof in good order and repair."

These are the vital provisions of this agreement so far as the decision of this case is concerned.

When the time came for the execution of the lease the defendant refused to let to the plaintiffs that portion of the roof of the building over Welsh's saloon. It claimed then and claims now that this agreement was to lease only the part of the roof situate over the portion of the building to be let to plaintiffs. The part of the roof over the saloon was by far the most valuable for sign purposes, as it was over the corner of Market and East Streets. The court found generally that

the defendant refused to execute the lease in accordance with its agreement.

The main point in controversy between the parties at the trial, and during negotiations carried on after the execution of the contract with a view to agreeing upon the terms of the lease, was over the question whether the sign space above the saloon should be included in the lease or not. This finding of the court was tantamount to a finding that the defendant refused in this respect to carry out the terms of its agreement. It claims that it did not so refuse, and that this finding is not supported by the evidence.

The defendant presented two written leases to the plaintiffs in both of which it reserved to itself this roof space over the saloon, and the presentation of the last of these two leases was accompanied by a demand in writing that the plaintiffs enter into the lease as presented. Besides this, from the beginning to the end of these negotiations over the form of the lease the attorney acting for the defendant, who carried on all these negotiations, insisted that the plaintiffs could not have this space above the saloon. He so insisted in polite language but nevertheless with emphasis and finality. The finding is, therefore, supported by the evidence.

The truth is plain that the defendant was of the opinion that the agreement it had made did not include this space on the roof over the saloon, and it acted upon this opinion. This view is still adhered to, but is a mistaken one. Nothing could be clearer than this agreement. It provided for the exclusive possession of the roof of the entire building for advertising purposes, and the exclusive care of the roof by the plaintiffs in consideration therefor.

The language of the agreement being clear and unambiguous, the questions asked by defendant of Welsh as to conversations with plaintiffs with reference to the portion of the roof over his saloon, and whether he had told them that his lease included sign privileges over the saloon, offered by defendant for the purpose of assisting the court in interpreting the agreement, were incompetent and properly disallowed, in that the evidence thus sought to be introduced tended to vary the terms of a written instrument the language of which is clear.

It being plain that a demand for the execution of a lease in accordance with the terms of the defendant's agreement would have been futile, no demand on the part of plaintiffs

was necessary; besides, the defendant assumed the burden of drafting and presenting the lease. The plaintiffs constantly requested a lease including the exclusive sign privilege of the roof. The defendant, as the trial court found, refused to accede to this demand, and nothing further was required to put it in default.

The agreement provided that the plaintiffs should furnish to the defendant satisfactory bondsmen for a sum equal to one year's rental as security for the lease. It is claimed that these sureties were never offered, but the obligation of the plaintiffs to furnish bondsmen did not ripen until the defendant was ready to execute a lease in accordance with its agreement, and this it was never ready or willing to do. Besides, the defendant having refused to execute such a lease, and thereby broken its contract, no further step was necessary to place it in default. Moreover, the court found that the plaintiffs were ready, willing, and able to enter into the lease upon the terms of the agreement at all times. This included of necessity ability, willingness, and readiness to furnish the securities provided in this agreement. The names of two sureties were presented to the defendant. It never actually rejected these sureties; and while there is a conflict of evidence as to their financial standing, the record is not without evidence that they were worth the sum required of them. The provisions of this contract were fulfilled if sureties sufficiently responsible as to be satisfactory to a reasonable person were offered to the defendant. (*Gladding, McBean & Co.* v. *Montgomery,* 20 Cal. App. 279, [128 Pac. 790].)

It is contended that the evidence does not support the finding as to damages to the plaintiffs. Without reciting the evidence on this, it may be said that there was an abundance of testimony showing a greater amount of damages than the trial court awarded.

Lastly, the defendant claims that the finding of an absolute refusal on its part to include the portion of the roof over Welsh's saloon would not justify a rescission of the whole contract, because the breach of such a condition is readily compensable in damages.

There is nothing in this point. The defendant entered into an agreement to lease this real property. This agreement contained an important stipulation which it refused to fulfill. The plaintiffs were not compelled to take such portion of the build-

ing as the defendant might be willing to let to them, and sue for damages for refusal to include the remainder of the building in the lease. Besides, we cannot say for what sign purposes the plaintiffs wished to use the roof. It may have been that they desired to use it for the advertising of the business which they were to conduct in the portion of the building which they were to occupy, and as such they might have considered it a vital part of their leasehold.

The judgment and order refusing a new trial in the case under consideration are affirmed.

The case of Osborn against the same defendant rests mainly upon the same facts as that of Long and Wobber.

Osborn is the assignee of Newell-Murdoch Company, who as real estate brokers brought Long and Wobber and the defendant together in this transaction. Simultaneously with the execution of the agreement of the defendant to lease the property to Long and Wobber defendant entered into an agreement with Newell-Murdoch Company, by which it agreed to pay these brokers the sum of three thousand five hundred dollars upon the execution of a lease satisfactory to the defendant of the building involved in the agreement with Long and Wobber. Having broken its agreement to enter into a lease in accordance with the terms of its contract, the defendant may not now be heard to say in an action by the real estate brokers for their commission either that Long and Wobber were not able to perform their contract, or that a satisfactory lease was not executed in the premises, because a satisfactory lease would have been executed had not the defendant refused to carry out its obligation to execute it, and it was because of the fault of the defendant alone that such lease was not entered into. We have already seen that it was not the duty of Long and Wobber to furnish their sureties so long as the defendant was unwilling to carry out its agreement. (*Phelan* v. *Gardner,* 43 Cal. 311.)

The judgment and order are also affirmed in this case.

Kerrigan, J., and Zook, J., *pro tem.*, concurred.

A petition to have the causes heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 24, 1918.