[Civ. No. 15. Fourth Appellate District.—October 29, 1929.]

EDMUND E. KATZ, Respondent, v. PEOPLE'S FINANCE AND THRIFT COMPANY (a Corporation), Appellant.

Raymond E. Hodge and John A. Hadaller for Appellant.

Walter E. Byrne for Respondent.

SLOANE, P. J.—Marcus Lathrop, as executor, substituted as party plaintiff in place of Edmund E. Katz, deceased, August 1, 1928.

This appeal was taken to the District Court of Appeal for the Second Appellate District and transferred to this court for decision.

Judgment was for plaintiff in the trial court in the sum of $537.50 and costs amounting to $17.10, on suit for the use and occupation of plaintiff's warehouse in the city of San Bernardino. Plaintiff at all times mentioned in the complaint was the owner of the warehouse in question. Respond-

ent concedes that the facts of the case are fairly stated in appellant's opening brief and are, as slightly abbreviated, as follows:

The uncontradicted evidence showed that appellant, defendant below, for a period of five weeks immediately prior to the fifteenth day of October, 1925, had occupied plaintiff's building under a lease. That on said date said tenancy was terminated, the rental thereunder being fully paid. That during said period appellant, the then owner thereof, kept and maintained in said building certain personal property consisting of a complete packing-house equipment for the packing and handling of fruit. That upon the termination of appellant's tenancy on October 15, 1925, respondent, plaintiff below, by a written agreement, leased the said building to one Chusaburo Yamada, this last tenancy being terminated on April 27, 1926, by notice and entry. On October 15, 1925, when appellant yielded and Yamada took possession of the building, appellant, as seller, and Yamada, as buyer, entered into a contract of sale of the packing-house equipment (Supp., pp. 23, 24, 25), which equipment remained on the premises during Yamada's occupation thereof, and until December 14, 1926.

On April 27, 1926, respondent served on both Yamada and appellant a notice of termination of Yamada's tenancy, which notice also required the removal, within five days thereafter, of all property of Yamada and appellant, or either of them, then on the premises (Supp., p. 26).

The property, consisting of the packing-house fixtures and equipment, was not removed at the termination of the Yamada lease, but remained in plaintiff's warehouse until December 14, 1926, when it was removed by appellant. Respondent from month to month rendered to appellant bills for such use and occupancy of the warehouse and demanded payment thereof.

The trial court found the appellant liable for the value of the use and occupation of the premises, in the sum of $537.50, and gave judgment for respondent and against appellant accordingly. The case was tried by counsel on both sides in a manner deserving of commendation and of the emulation of trial lawyers generally. The facts on which the parties are not in dispute were stipulated to, and the controversy limited to the bare issue upon which the liabil-

ity of appellant turns, namely, the ownership and control of the fixtures and equipment with which the building was occupied during the period covered by the action. The evidence disclosed and the trial court found that the retention of this property in the warehouse rendered the premises unavailable for any profitable use by the owner. The only disclaimer of liability by appellant is the contention that it was not the owner of, or in the control of, the fixtures and equipment during the period sued for.

The stipulated facts show that the respondent leased the real property to one Chuzaburo Yamada on October 15, 1925, and that on the same date the appellant, the then owner of said personal property, entered into a contract of purchase and sale with said Yamada of the trade fixtures and equipment in the building.

The lease of the real property to Yamada was soon after terminated, and notice was given by the respondent to Yamada and to appellant to remove the packing-house equipment and demand upon defendant to pay for the occupancy of the premises soon after followed.

■ The case turns upon the question as to whether the purchase and sale contract between appellant and Yamada was merely an agreement to sell, or a consummated sale and transfer of title of the fixtures and equipment. This agreement was in writing, and in words and figures as follows:

"Contract of Sale.

"This contract of sale entered into between the Peoples Finance and Thrift Company, a corporation, hereinafter called the party of the first part, and Chuzaburo Yamada, hereinafter called the party of the second part, this fifteenth day of October, 1925

"Whereas

"The party of the first part agrees to sell to the party of the second part, and the party of the second part agrees to purchase from the party of the first part, all that certain personal property situate and described as follows, to-wit: Complete packing-house equipment for citrus fruits, apples, etc.''

(Here follows itemized description of property.)

"The party of the first part agrees to sell all said personal property at said described location for the sum of fif-

teen hundred dollars ($1500.00), and the party of the second part promises to pay to the party of the first part as follows: One Hundred Dollars ($100.00) upon the signing of this contract, receipt of which is hereby acknowledged, and the balance in monthly installments of $50.00 or more, with interest thereon from date until paid, at eight per cent. per annum, payable monthly, said installments of $50.00 or more, due on the first day of each month, beginning January first, 1926, and thereafter on the first day of each month, until the full amount of Fifteen Hundred Dollars ($1500.00) and interest, is paid.

"The party of the second part agrees, in addition to the monthly installments, to pay for all materials used, such as boxes and wrapping paper, said additional payments to be credited on the purchase price above mentioned.

"The party of the second part agrees to keep the said personal property insured at all times against fire, in a company acceptable to the party of the first part.

"Witnesseth our hands this fifteenth day of October, 1925.

"THE PEOPLE'S FINANCE & THRIFT COMPANY,
"EDNA M. JAMES, Asst. Secy.
"Party of the first part.
"CHUZABURO YAMADA,
"Party of the second part."

If the execution of this agreement constituted a sale and transfer of the title, accompanied as it was by delivery of possession to Yamada, appellant obviously was no longer responsible, without an express agreement, for its retention in respondent's building.

If, on the other hand, the agreement was only a conditional contract, under which appellant retained title with the right to resume possession and control on the failure of Yamada to comply with the terms of the contract, appellant should have removed these fixtures and equipment on notice of termination of Yamada's lease, and on respondent's demand, as it finally did on or about December 14, 1926.

It is not always an easy matter to determine whether an agreement of this general character is an absolute or a conditional sale, an executed or an executory contract.

The contract in question does not by its terms reserve title in the vendor, until stipulated payments of the pur-

chase price are made, and it is denominated in its caption a contract of sale.

Possession was given to the purchaser, and nothing further remained to be done by the vendor to pass the title.

On the other hand, the body of the instrument recites that the party of the first part "agrees to sell" and the party of the second part "promises to pay." These are not apt words for an instrument intended to pass title, and to serve as a bill of sale. The contract also requires the purchaser "to keep the said personal property insured at all times against fire, in a company acceptable to the seller." Neither of these recitals, however, is at all conclusive of a reservation of title in the appellant.

Ruling Case Law, volume 23, page 1348, section 171, lays down the following rule of interpretation of contracts:

"The question whether the contract is executory or executed depends primarily on the intention of the parties to be gathered from the terms of the contract and such surrounding circumstances as may be legitimately considered by the court as evidences of intention. Effect will be given to words of present transfer when not inconsistent with other circumstances or provisions evidencing a contrary intention. Still the fact that the bargain is in words of either past or present time, does not conclusively evidence a perfected sale, as distinguished from an executory contract of sale, and when such is apparently the intention of the parties the contract will be deemed executory though the instrument states that the property is 'sold' to the buyer, such word being construed as meaning 'contracted to be sold.' On the other hand, though the contract is in terms of future time, or where it recites that the seller has agreed 'to sell,' it may constitute an executed contract of sale, if such was the intention of the parties."

Likewise, the requirement that the property be kept insured in some company acceptable to the vendor does not in itself establish the inference that the vendor is reserving title which he desires to preserve against the risks of fire. He may merely intend to preserve his right to resort to an attachment lien against the insurance money in case of the destruction of the property and the default of the purchaser in meeting the unpaid purchase price.

However, both recitals referred to raise an inference of an intention that the sale contract shall be considered conditional and not absolute. ▮ At any rate, we deem the writing sufficiently ambiguous and uncertain to permit the court to consider extraneous circumstances in determining the intention of the parties.

One of the most common applications of the rules for explaining ambiguities of a written instrument is the interpretation the parties themselves have accepted and acted upon.

▮ The general rule as to supplementing a text of a written instrument by reference to circumstances surrounding its execution is correctly stated in 6 California Jurisprudence, as follows: ''When a contract has been reduced to writing, the instrument of course, measures the rights, duties and obligations of the parties. But not infrequently doubt arises as to what rights, duties and obligations are conferred, and such questions are to be settled by application of the rules of interpretation.'' (*Supra*, p. 247.)

These rules are quite fully set out in title III of the Civil Code, sections 1635–1661. Section 1647 provides: ''A contract may be explained by reference to the circumstances under which it was made and the matters to which it relates.''

A somewhat different and more liberal rule applies to the admission of extrinsic evidence for the interpretation of a contract when the controversy is between one of the parties to the instrument and a third party.

''Strangers are at liberty to show that the written instrument does not disclose the full or true character of the relation between the contracting parties.'' (6 Cal. Jur. 252, sec. 162; *Luckie* v. *Diamond Coal Co.*, 41 Cal. App. 468 [183 Pac. 178].)

In the Luckie case, *supra*, which arose on a controversy as to which of the contracting parties was in control of an automobile at the time of an accident, the suit being by a third party injured in the accident, the opinion declares, page 479 of 41 Cal. App.:

''It is competent for the plaintiff in such an action to show that, as a matter of fact, the parties to a written contract creating the relation of contractee and independent contractor at that time, put a different construction upon it

by their conduct, and that the defendant has in fact exercised a supervision and control over the work in its details inconsistent with the presumed character of the other party to the contract as an independent contractor. . . .

"For these reasons we hold that the nature of the relation between defendant and Foulks at the time of the accident was not determinable solely from the written contract of employment, but from all the evidence in the case, particularly that which bore on the question as to whether, at that time, defendant was assuming the right to control and direct Foulks respecting the manner in which the work should be executed by him."

Again, in 6 California Jurisprudence, 254, 258, we find this text, supported by the authorities there cited:

"Intention is to be ascertained from a consideration of the language employed in the subject matter of the contract. Resort is first had to the contract itself; and if the intention is doubtful under the terms of the instrument, the surrounding circumstances may be considered, to determine its meaning. The court will ascertain the relation of the parties to each other, and to the subject matter, and if possible to construe the instrument, however inartificially drawn, as to give effect to the intention of the parties, if it can be done without disregarding the language of the instrument. . . .

"The understanding of the parties as to the rights of each under the contract, must be ascertained and enforced so as to protect the rights of all of them."

The application of the rules for resorting to the construction placed upon the terms of a contract in case of ambiguities is thus stated in 6 California Jurisprudence, page 304: "The intention of the parties is to be ascertained from the writing alone, if possible, and not from the subsequent actions of one of them. However, it is well recognized that the terms of a contract may be manifested by conduct when not stated in words. And where the meaning is doubtful the acts of the parties done under a contract afford one of the most reliable means of arriving at their intention."

We find in the instant case the following circumstances which throw light on the interpretation placed upon this contract between the parties themselves as to the owner-

ship and right of possession of the personal property in question.

It appears from the record that Yamada, at the time of the cancellation of his lease on the warehouse, vacated the premises without removing the packing-house equipment, and that he thereafter abandoned this property without making any claim of ownership or right to its possession. On November 10, 1926, while this personal property was still in the warehouse, the appellant company served the following notice on Yamada:

"To Chuzaburo Yamada, 1542 7th St.

"Santa Monica, California.

"Please take notice that you are delinquent in your payments to the Peoples Finance and Thrift Company of San Bernardino, California, in the sum of $434.80 & int., for and on account of your contract with that corporation dated October 15th, 1925, in which contract you agreed to purchase and pay for certain Fruit Packing House equipment according to the terms in said contract specified, to which you are directed for particulars.

"You have been verbally notified several times by our Mr. Ball, Assistant Secretary of the above named corporation, and you are hereby formally notified that unless the delinquent sums are paid not later than November 13th, 1926, at the office of the said Peoples Finance and Thrift Company, at 431 Court Street, San Bernardino, California, the said corporation will declare the said contract forfeited and your rights in and to the said property forfeited and will take possession of the said property, and attempt to dispose of it.

"PEOPLE'S FINANCE & THRIFT COMPANY, a Corporation,

"By ——————————,

"Secretary."

This notice clearly indicates a claim of title on the part of appellant and the right to cancel the agreement of sale and resume possession of the property, by reason of Yamada's default in payment of the stipulated installments; and a few days later, on or about December 14th, appellant actually took possession of and removed this property from the warehouse, in compliance with the demand of respondent.

These declarations and acts of ownership and possessory rights of the property on the part of appellant, without any

legal proceedings to divest Yamada's title or right to possession, if he had such under the contract, are inconsistent with the contention that appellant had parted with its rights of property under the sales agreement.

There was sufficient uncertainty in the terms of the written contract to justify the court in considering the extraneous evidence; and the evidence taken as a whole strongly tends to sustain the finding of the court that this agreement was one of conditional sale.

The rule that where there is merely a conflict in the evidence, the finding of the trial court will be sustained on appeal if substantially supported, applies to the interpretation of a contract of this character as well as any other.

In *Pratt* v. *Welcome*, 6 Cal. App. 475 [92 Pac. 500, 501], it is said: "The principal question involved in the trial of this case was whether a sale made by the plaintiff to the defendant of the animal in dispute, was absolute or conditional and the findings claimed to be inadequately sustained by the evidence are of probative facts, which tended to support one of these contentions. There is evidence to sustain either theory, and the findings so made upon conflicting evidence will not be disturbed by an appellate court."

The judgment is affirmed.

Barnard, J., and Marks, J., concurred.