R. H. Stearns Company *vs.* Isabel Anderson.

Suffolk.    November 2, 1937. — October 25, 1939.

Present: Field, C.J., Lummus, Qua, & Dolan, JJ.

*Landlord and Tenant,* Construction of lease, Covenant to pay taxes. *Contract,* Construction.

Provisions of a forty year lease, commencing October 1, 1923, that the lessee should pay to the lessor each month one twelfth of the city, county, and State taxes "assessed . . . the tax year previous," that on November 1 of each year there should be an adjustment of "said payments" so that "in each . . . year of said term" the lessee should "pay the amount for which premises shall be liable for such taxes in that year," that "in all" the lessee should "pay all taxes to which the demised property . . . shall become liable for [the] forty years," and that it was understood that the lessee should "pay all such taxes and . . . all other assessments and charges and water rates for which the premises may become liable during the said term except betterments," required the conclusion that the dominant purpose, to which the provisions for instalment payments were subordinate, was to throw upon the lessee the burden of all taxes upon the demised property except betterments during the term of the lease.

A working arrangement of many years by which the parties to the lease above described construed the patently ambiguous provisions as to the monthly instalments was adopted by this court as a reasonable workable plan carrying out the substance of those provisions.

The lessee in the lease above described took the risk of the change in the assessment date to January 1 effected by St. 1933, c. 254.

The provisions of the lease above described were interpreted by this court as requiring the lessee, during the term of the lease, to pay to the lessor on the first day of each month a sum equal to one twelfth of the last tax bill preceding such payment and requiring the lessor and the lessee on November 1 of each year to make such adjustment that the lessee would have paid each tax assessed by the next following assessment date, and as requiring the lessee to pay to the lessor at the termination of the lease any portion of any tax not previously paid.

Bill in equity, filed in the Superior Court on January 29, 1937, for construction of a lease.

The facts being agreed upon, the case was reported by *Williams,* J.

*J. Wiggin,* (*J. A. Plummer & F. W. Campbell* with him,) for the plaintiff.

*T. Hunt,* for the defendant.

QUA, J.   This is a suit for the interpretation of a paragraph relating to taxes in a lease given by the defendant to the plaintiff on September 29, 1923.   There is also a prayer that the court determine what amounts, if any, are now due from the plaintiff to the defendant on account of taxes assessed upon the demised premises as of April 1, 1934, January 1, 1935, and January 1, 1936, and upon what dates any such amounts became due and payable.   No question of pleading or procedure has been raised.   The defendant joins in the prayer for an interpretation of the lease and states her contentions as to the amounts claimed by her to be due to her.   Jurisdiction is found in G. L. (Ter. Ed.) c. 213, § 3, Tenth A, and in Rule 101 of the Superior Court (1932), adopted under the authority of that statute.

The lease covers a large mercantile building, used as a dry goods store, at the corner of Tremont Street and Temple Place in Boston.   It begins with October 1, 1923, and runs for a term of forty years.   The paragraph in dispute immediately follows the lessee's covenant to pay rent.   The material part of it reads thus: "In addition to the monthly installments of rent above provided for, Lessee hereby covenants to pay to Lessor on the first day of each month during the term of this lease, in like gold coin, a sum equal to one-twelfth (1/12) of the amount of the city, county and state taxes assessed upon the premises the tax year previous, and upon the first day of November of each and every year, said Lessor and Lessee shall adjust said payments so that the Lessee shall in each and every year of said term pay the amount for which said premises shall be liable for such taxes in that year; and in all, shall pay all taxes to which the demised property, and any and all additions thereto, shall become liable for forty (40) years from and after October 1, 1923; it being understood that Lessee shall pay all such taxes and shall also pay all other assessments and charges and water rates for which the premises

may become liable during the said term except better-
ments; . . . ."

The immediate cause of the bringing of this suit seems to
have been the change in the date for the assessment of local
taxes from April 1 to January 1 in each year, brought about
by St. 1933, c. 254. See particularly § 29, amending G. L.
(Ter. Ed.) c. 59, § 11. This change first affected the date
of assessment in 1935. St. 1933, c. 254, § 66. Before the
change and while taxes were assessed as of April 1 the
plaintiff as lessee had paid to the defendant as lessor each
month from May 1 to October 1, inclusive, one twelfth of
the preceding year's tax bill. On November 1 in each year
the plaintiff had paid one twelfth of the tax bill of that
year, and at the same time the parties had made an adjust-
ment of preceding payments from May 1 to October 1,
inclusive, so that the total of the payments made from
May 1 to November 1 inclusive was equal to seven twelfths
of the tax bill of that year. The balance of the tax bill
assessed for each year had been paid in five equal instal-
ments, one each on December 1 and on the first of the
January, February, March and April next following, so
that by the April 1 payment of each year the entire tax
bill assessed as of April 1 of the preceding year had been
paid. The current tax bills have often been available before
November 1, so that the parties have sometimes made the
annual adjustment on October 1, instead of November 1.
This same method of payment had also prevailed under a
previous lease originally given in 1905 by the defendant's
predecessor in title to the partnership of R. H. Stearns and
Company, the plaintiff's predecessor, to which the defend-
ant and the plaintiff had later become parties through a
conveyance of the reversion to the defendant and an assign-
ment of the lease to the plaintiff. This former lease con-
tained a similar tax paragraph. The method of payment
just described had also been confirmed by correspondence
between the parties in 1922.

After January 1, 1935, the plaintiff continued to pay
monthly instalments of one twelfth of the 1934 tax until
October 1, 1935, when it paid one twelfth of the tax as-

sessed as of January 1, 1935 (the record reads April 1 — an obvious clerical error), less an adjustment due to the fact that the five preceding payments, based on the 1934 tax, had been at a rate in excess of one twelfth of the tax for 1935. On the first of each month thereafter to October, 1936, inclusive, it paid one twelfth of the tax assessed as of January 1, 1935. On October 29, 1936, the plaintiff paid an adjustment of six twelfths of the difference between the tax for 1935 and that for 1936, and on November 1, and on December 1, 1936, it paid one twelfth of the tax assessed as of January 1, 1936. In other words, after the change in the assessment date the plaintiff continued to make instalment payments on the same basis as before, each equal to one twelfth of the last preceding tax bill, with adjustments in October which, as before, covered the period back to the preceding April and not to the preceding January. The issues in the case hinge principally upon whether or not the plaintiff was justified in thus continuing to pay after the change in the assessment substantially as it had paid before, and upon the effect of that change upon the tax paragraph of the lease.

If we begin by looking at the tax paragraph of the lease itself without regard to any interpretation which the parties may have placed upon it, the dominant purpose seems to be to throw upon the lessee the burden of "all taxes" for which "the demised property" "shall become liable" during the forty-year term ending September 30, 1963. This purpose is emphasized by repetition after the second semicolon and by the inclusion of "all other assessments and charges and water rates for which the premises may become liable during the said term . . . ." Taxes for which the demised "premises" or "property" shall "be" or "become" liable can hardly be other than those for which a lien shall accrue against the property itself. In no other way can the property be or become liable. The plaintiff's suggestion that these expressions as to the property being or becoming liable refer only to the liability of the lessee (not the property) to pay the monthly instalments as previously set forth in the para-

graph, and that those may not include all the taxes assessed during the term, is inconsistent with the precise meaning of the words used. That construction would reduce the reiterated assertions that the lessee is to pay all taxes to the rank of needless restatements of what had already been said. Moreover, in addition to taxes the lessee is to pay "all other assessments and charges and water rates for which the premises may become liable during the said term." · Here the words "become liable" cannot refer to any liability of the lessee to pay the monthly instalments, as there is no provision for the payment of those charges in instalments. The lease as a whole is so very clear in casting upon the lessee the burden of paying to the lessor sums equal to all taxes which may be assessed against the premises at any time during the forty-year term that we cannot regard it as open to any other construction. *Welch* v. *Phillips,* 224 Mass. 267, 268. *Suter* v. *Jordan Marsh Co.* 225 Mass. 34. *Baker* v. *Horan,* 227 Mass. 415, 419. *Koshland* v. *American Woolen Co.* 289 Mass. 308. *Miller* v. *Wadsworth, Howland & Co. Inc.* 296 Mass. 172, 174, 177. The case of *Welch* v. *Gordon,* 284 Mass. 485, is distinguishable because of differences in wording which there rendered the provision for monthly instalments dominant over other clauses. See *Security System Co.* v. *S. S. Pierce Co.* 258 Mass. 4.

Even if the words of the present lease were doubtful enough on this point to admit evidence to explain their meaning, no facts are shown which should lead us to adopt the plaintiff's suggestion hereinbefore stated. It is true that after the new lease was made in 1923 the lessee continued to pay to the lessor monthly instalments calculated upon the 1922 tax until November 1, 1923, as if there had been no break in the continuity of the relations between the parties. Under the circumstances this was a natural thing to do. So far as appears, however, the lessee did pay to the lessor eventually all taxes assessed upon the property while the 1905 lease was in force. In the correspondence there are intimations of a lease and of the payment of taxes by the lessee even before the lease of 1905. What

the terms of that earliest lease were we are not informed, so that we do not know how the tax payments originally started. There is not enough to establish a construction by the parties of the present lease as to the total amount of taxes to be paid by the lessee any different from that which we have here adopted.

But the tax paragraph also manifests an intention that the lessee's payments on account of taxes shall be made in monthly instalments on rent days; that each instalment shall be equal to one twelfth of the "taxes assessed upon the premises the tax year previous," with adjustments upon November 1, so that the lessee shall "in each and every year of said term pay the amount for which said premises shall be liable for such taxes in that year." So far as possible full effect must be given to this provision and to every part of it, but as it relates merely to the time of payment rather than to the substantive obligation to pay, it should be held subordinate to the repeated and emphatic statements of the principal obligation in the event of any conflict between the two.

The real difficulties in the case arise out of these instalment provisions. The expression "taxes assessed upon the premises the tax year previous" would seem to refer to the taxes assessed next before each monthly instalment payment. Conceivably it could refer to the taxes assessed at the beginning of that full year between two assessments which had last expired before each monthly instalment payment. We exclude this last suggestion as inconsistent with the whole course of conduct of the parties as well as with the present contentions of both. It seems improbable that when they provided for adjustments on November 1, by which day the tax bill for the current year would be available (see G. L. [Ter. Ed.] c. 59, § 57, as amended, and predecessor statutes), they intended that the adjustment should be based upon an assessment which would then be more than a year and a half old, and the bill for which would have been available over a year. It is reasonable to suppose that the date November 1 was fixed with reference to the availability of the bills and the payment of taxes for the current year. The words "each and every year of said term" seem to refer

to the periods of a year beginning on each October 1, that being the date on which the term began, and ending on each following September 30, that being the date on which the term will end. The words "the amount for which said premises shall be liable for such taxes in that year" seem to mean the amount which shall become a lien during the term year.

Now if we read the instalment provisions, giving to each of the expressions just discussed the interpretation hereinbefore suggested for it, we shall find that the instalment provisions are and always were incapable of practical performance exactly as written. It was impossible to begin paying on any May 1 a sum equal to one twelfth of the tax assessed on April 1 (now January 1), the amount of which would not be known for several months, and it was impossible to make an adjustment on any November 1 which would result in the lessee paying "in" a term year the exact sum assessed in that term year, because every term year began on October 1, and no assessment would be made in that term year until the following April (now January), so that the amount of the assessment in that term year could not be known at the time when the adjustment would have to be made. In order to render this part of the lease workable some interpretation must be given to one or more of the expressions to which reference has been made other than the interpretation above suggested as the one most immediately plausible. An ambiguity exists as to the provisions for monthly instalments which should be resolved, if possible, by reasonable construction of the instrument.

Confronted by these difficulties, the parties themselves came to a working arrangement by which they construed these instalment provisions of the lease for themselves, and under which they and their predecessors have operated for approximately thirty years. The gist of this arrangement, as we see it, is that the last previous tax bill is taken as the basis for the monthly payments, and on November 1, when the new tax bill has become available, an adjustment is made of all payments since the latest assessment, so that the amount for which the premises are liable in every year is paid by the next following assessment day. It would hardly

be profitable to inquire which words of the lease have been obliged to yield somewhat of their natural signification in order to reach this result. Perhaps it could be reached by reading the words "amount of . . . taxes assessed . . . the tax year previous" as referring to the last amount known and capable of being used for the required calculation, and by reading the words "in each and every year of said term" as meaning in each and every tax year within said term, a meaning not beyond reason, as "tax year" had been mentioned just before. See *J. L. Hammett Co.* v. *Alfred Peats Co.* 217 Mass. 520, 523; *Miller* v. *Wadsworth, Howland & Co. Inc.* 296 Mass. 172, 174. At any rate we think that the arrangement made by the parties is not outside the scope of possible construction of the language of the lease. Neither party has contended that it is. Both parties have argued that weight should be given to the construction of the parties, although they do not agree as to the effect of that construction after the change in the assessment date. The law is well established that such practical construction by the parties of an ambiguous instrument is entitled to great weight and will usually be adopted by the court. *Winchester* v. *Glazier*, 152 Mass. 316, 323. *Ovans* v. *Castrucci*, 267 Mass. 600, 605. *Arey* v. *George Associates, Inc.* 299 Mass. 130, 133. In this case the construction adopted by the parties and acted upon through so many years is a reasonable, workable plan carrying out the substance of the contract. It seems to involve no greater difficulty and no wider departure from the literal wording than any other practical construction that has been suggested or that occurs to us. We think that it should prevail.

The plaintiff contends that under the construction adopted by the parties the November adjustment should still reach back only to cover payments made since April 1, and that the final instalment of the tax for any year should not become payable until April 1 of the year following, although the assessment date has now been advanced to January 1. We cannot agree with this. The first day of April could have no more significance than the first day of any other month, except as it marked the date of a tax assessment. *Miller* v.

*Wadsworth, Howland & Co. Inc.* 296 Mass. 172, 174, 175. Now that the tax assessments are made as of January 1, the November adjustments should reach back to cover payments made since January 1, just as they formerly reached back to cover payments made since April 1, and the tax for any year should be fully paid by January 1 of the year following, just as it was formerly paid by April 1 of the year following. On November 1, 1935, an adjustment should have been made by the payment to the defendant of such a sum that, together with the payments previously made since April 1, and with the further payments of one twelfth of the 1935 tax on November 1 and on December 1, 1935, and on January 1, 1936, the 1935 tax would have been fully paid by January 1, 1936. We adopt November 1, 1935, as the date for the change in the calculation of the adjustment rather than November 1, 1934, because the statute changing the assessment date had not gone into effect on November 1, 1934. St. 1933, c. 254, § 66. See *Miller* v. *Wadsworth, Howland & Co. Inc.* 296 Mass. 172, 175–176. Similarly on November 1, 1936, such adjustment should have been made and such sum paid that, together with the payments previously made since January 1, 1936, and with the further payments of one twelfth of the 1936 tax on November 1 and on December 1, 1936, and on January 1, 1937, the 1936 tax would have been fully paid by January 1, 1937. This does not impose upon the plaintiff any burden not assumed by it when it executed the lease. The plaintiff is liable for all taxes assessed during the term, whatever the date of assessment. It took the risk of the change in the assessment date. *Welch* v. *Phillips*, 224 Mass. 267, 268. *Miller* v. *Wadsworth, Howland & Co. Inc.* 296 Mass. 172, 175. By that change the tax "year" from April 1, 1934, to January 1, 1935, came to include only nine months. It is reasonable and in accordance with the construction of the lease by the parties that allowance should be made for such a change in the next November adjustment instead of permitting it to cause a three months' lag in all tax instalments for the entire remainder of the term.

A final decree is to be entered interpreting the tax para-

graph of the lease as requiring the lessee, during the term of the lease, to pay to the lessor on the first day of each month a sum equal to one twelfth of the last tax bill preceding such payment and requiring the lessor and the lessee upon the first day of November of each and every year to make such adjustment that the lessee shall have paid each tax assessed by the next following assessment date, and as requiring the lessee to pay to the lessor at the termination of the term of the lease on September 30, 1963, or as soon thereafter as the necessary figures become known, any portion of any tax assessed upon the premises during the term of the lease and not theretofore paid.

The decree is also to determine and to provide for payment by the plaintiff to the defendant of such sums as proper adjustments made according to the foregoing interpretation of the lease on November 1, 1935, and on November 1, 1936, would have shown to be due on those dates, with interest thereon.

*Ordered accordingly.*