[Civ. No. 14792. First Dist., Div. Two. Feb. 8, 1952.]

EFFIE M. STRECKER, Appellant, v. BARNEY H. BARNARD et al., Respondents.

Douglas A. Nye for Appellant.

Jerome L. Schiller for Respondents.

JONES, J. pro tem.—The respondents in this action are the owners of a two-story and basement building at 519 Mission Street in San Francisco. On March 12, 1948, they executed a lease of the entire second floor of the building to the appellant for a term of seven years for the purpose of operating on the premises blueprinting, photo copying and kindred lines of business. The term of the lease is fixed as commencing on April 1, 1948, and the leased property is described as "That certain second story space designated as No. 519 Mission Street being the entire upper floor of that certain two story and basement building situated on the Southerly line of Mission Street between First and Second Streets together with the exclusive use of the vestibule and entrance to said floor as well as the exclusive use of the elevator leading from said vestibule and being adjacent to the Mission Street front."

After the appellant took over the property, and on January 19, 1949, the Division of Industrial Safety made an inspection of the elevator and served notice on the appellant that it was defective and that certain safety requirements would have to be met. Neither of the parties had any knowledge that the elevator did not come up to safety requirements until this notice was served although the appellant had made a full inspection of the premises before the lease was executed. Upon the notice being served appellant immediately made demand upon the respondents that they make the changes and installations designated. This the respondents refused to do. Appellant then commenced this action to have the rights and duties of the parties under the lease determined. The respondents cross-complained asking that the cost of making the alterations

and installations required by the Division of Industrial Safety be ascertained, and that the appellant be required to make them, or, in the alternative, to pay to respondents the cost of having the required work done. The trial court found it to be the duty of the lessee to make the required installations and fixed the cost thereof at $1,490. Judgment was entered accordingly and the plaintiff appealed.

The requirements specified by the Division of Industrial Safety as necessary to bring the elevator within the safety regulations of the state are: Install a capacity sign on the car enclosure; extend the car enclosure up to car top at counterweights; install standard hoistway gates 66" in height on all floors; install approved contact locks on all hoistway gates; provide a sequence device in connection with gate locks and control circuit; replace the present open type limit switch with approved type; install a light and light switch in penthouse; install an approved type disconnecting switch in penthouse; install an externally operated disconnect switch in the machine room; install standard bumpers in the pit; attach a seal on the governor so that adjustment cannot be made without breaking the seal; install a light switch in machine room located no more than 18 inches from the lockside of machine room door; provide safe access to penthouse.

The following provisions of the lease are pertinent to the issues involved here:

"FIFTH: That the lessee will, at his sole cost and expense, comply with all of the requirements of all Municipal, State and Federal authorities now in force, or which may hereafter be in force, pertaining to the said premises, occasioned by or affecting the use to which said premises have been, are being, or are to be put by the lessee, and will faithfully observe in the use of the premises all Municipal ordinances and State and Federal statutes now in force or which may hereafter be in force."

"SIXTH: That the lessee will, at his sole cost and expense, keep and maintain the said premises and every part thereof, except the roof and sidewalls, (which the lessor agrees to repair) but including glazing and the interior of the premises, in good and sanitary order, condition and repair, hereby waiving all right to make repairs at the expense of the lessor. . . ."

"EIGHTH: That the lessee, during the entire term of this lease, shall, at his own cost and expense, keep all elevators in

or upon the demised premises in good order, condition and repair, and also during said time, at his own cost and expense, keep all elevators insured against injury to persons. . . ."

We are presented with no question of a deteriorated or dilapidated elevator needing repair or rebuilding, but are only called upon to decide whether the lessor or the lessee under this particular lease is required to make the safety installations required by the Division of Industrial Safety in an elevator otherwise in good condition.

■ In the absence of fraud or concealment no duty is owed by a landlord to make repairs or to prepare the premises for the use of the tenant. As is said in *Davis* v. *Stewart*, 67 Cal.App.2d 415, 418 [154 P.2d 447] : "In the absence of an express covenant or stipulation binding him so to do, the landlord is under no obligation to put the demised premises in any particular condition." (15 Cal.Jur. 690.) To the same effect is *Farber* v. *Greenberg*, 98 Cal.App. 675 [277 P. 534].

■ The rule in this state is that the tenant takes the demised premises in the condition in which he finds them, and from that point on the lease measures the rights of the parties. (*Katz* v. *People's Finance etc. Co.*, 101 Cal.App. 552, 553 [281 P. 1097].)

■ A lease presents the aspects of a contract, and also that of a conveyance. It has two sets of rights and obligations— those arising from the relation of landlord and tenant and which are based on privity of estate, and those growing out of express stipulations and which are based on privity of contract. ■ It is a contract, not only on the part of the lessor, but also on the part of the lessee. ■ And, on a breach of its contractual obligations, a cause of action accrues to the injured party as upon the breach of any other contract. (15 Cal.Jur. p. 614.)

■ Where doubt arises as to what the rights, duties and obligations of the parties are under the terms of a lease, the statutory rules for the interpretation of contracts apply. (*Knox* v. *Wolfe*, 73 Cal.App.2d 494, 499 [167 P.2d 3].) Sections 1635 to 1662 inclusive of the Civil Code give us the statutory rules of interpretation. And we find that it is provided in section 1638 that "the language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity," and in 1644 that "The words of a contract are to be understood in their ordinary and popular sense, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." Also,

1647 provides that a contract may be explained by reference to the circumstances under which it was made, and by the matter to which it relates. The dispute here, of course, relates to the elevator and we need apply the stated rules in construing the lease only insofar as it pertains to this device.

In paragraph "Sixth" the appellant agrees to keep every part of the premises, including the interior, excepting the roof and sidewalls, in good condition and repair, and in paragraph "Eighth" she expressly stipulates that she will at her own cost and expense "keep all elevators in or upon the demised premises in good order, and condition." This language is clear and explicit and when considered in its ordinary and popular sense, it binds the appellant to maintain the elevator in a safe and sound condition so that it may be used for the purpose for which it was designed, namely, to transfer persons and property from one floor to another in the building without danger.

This construction is wholly consistent with the provisions of paragraph "Fifth," wherein appellant in clear and explicit language covenants at her "sole cost and expense" to "comply with all of the requirements of all Municipal, State and Federal authorities pertaining to said premises, . . . or affecting the use to which said premises are being put by the lessee, and will faithfully observe in the use of the premises all Municipal ordinances and State and Federal statutes. . . ." In other words she covenants to make lawful use of the premises only.

A lease containing provisions similar to those before us was before the court in the case of *Baker* v. *Horan*, 227 Mass. 415 [116 N.E. 808]. In that case the lessee "had agreed that no use should be made of the premises 'which shall be unlawful . . . or contrary to any law of the commonwealth, or ordinance . . . for the time being in force, of the city.' " The building inspector gave notice to the owner of the premises involved that the elevator was defective and was being operated in violation of the building code in that the grillwork on top of the elevator was broken and should be replaced; that rewinding of the armature should be done to reduce excessive speed; that a renewal of the car shoes should be made; that a light should be installed in the car and another in the machine room; and that the landing doors should be covered with sheet iron to make them fireproof. The owner made the designated changes and installations and sued the lessees of the premises for the cost thereof. In sustaining a judgment

against the lessees for the sums so expended the court said: "By using the elevator without making the changes under consideration the defendants were making an unlawful use of the premises. By reason of their failure to abate the nuisance before the lease expired the landlord was compelled to do so; but the express terms of the lease imposed upon them the expense of making those reasonable repairs and improvements which were required for the lawful, tenantable use of the premises."

As in the Massachusetts case, the lessee here covenanted to make only lawful use of the premises. By so stipulating she obligated herself to comply with the reasonable requirements of the Division of Industrial Safety, and she is bound by her obligation.

Appellant's point that the elevator does not come under the terms of the lease is without merit. It is held in *Osborn* v. *Henry Cowell Lime etc. Co.*, 37 Cal.App. 67 [173 P. 492], that the term "exclusive right," when applied to a space designated in a lease, brought the area so designated under the terms and provisions of the lease. So, here, the term, "exclusive use" as applied to the elevator and vestibule could have been designed for no other purpose than to bring forth under the terms and conditions of the lease. That the elevator was intended to be leased with the second floor finds further support in the stipulation that "during the entire term of this lease . . . at (her) own cost and expense" she will "keep all elevators insured against injury to persons. . . ." Moreover appellant took over the possession and operation of the elevator with the rest of the premises and is still in possession and operating it. Under such circumstances she is estopped from questioning the sufficiency of the description by which she took possession. (*Merchants Nat. Bank* v. *Weston*, 34 Cal.App. 693 [168 P. 587].) In *Beckett* v. *City of Paris Dry Goods Co.*, 14 Cal.2d 633, 637 [96 P.2d 122], it is said that "where one goes into possession of premises under a contract containing an ambiguous or uncertain description of property to be occupied and pays the stipulated rent, it will be enforced as a lease if the parties acted upon it as relating to particular premises." So here any ambiguity has been cured by entry and payment of rent.

It is clear that the appellant undertook, at her own expense, to keep the elevator in good order and condition and to use it only in a lawful manner. Having assumed this obligation,

the duty rests upon her to make the reasonable changes and installations required by the Division of Industrial Safety for the safe operation of the elevator.

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.