MARY W. ERHARD & another *vs.* F. W. WOOLWORTH CO.

Plymouth. October 5, 1977. — February 13, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Landlord and Tenant,* Construction of lease, Covenant to pay taxes. *Taxation,* Real estate tax: lease.

Upon assessment of real estate taxes for a certain year during the period of a lease, a lessee under a covenant to pay "all taxes" on the premises was required to pay them for that entire year. [354]

A lessee under a convenant to pay all real estate taxes on the premises dur-
   ing the entire year of assessment was not relieved from such obligation
   by provisions requiring proration of the rent on termination of the
   lease under an option before expiration of the year [354-355]; by any
   modification or agreement calling for a proration of taxes [355]; or by
   any general rule that all obligations of tenants are to be measured by
   occupancy [355-356].
Leases on premises hereafter executed containing a provision requiring
   the tenant to pay the real estate taxes assessed thereon will be inter-
   preted as requiring him to pay the amount of taxes allocable to the
   period covered by the lease, in the absence of a clearly expressed agree-
   ment requiring the tenant to pay the taxes for the entire year of assess-
   ment, whether or not the lease covers that whole period. [356-358]


BILL IN EQUITY filed in the Superior Court on April 4,
1973.

The suit was heard by *Beaudreau, J.,* on a master's
report.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*James T. Ronan* for the defendant.

*David A. McLaughlin* for the plaintiffs.

ABRAMS, J. The plaintiffs, owners of real property which
was leased to the defendant F. W. Woolworth Co. (Wool-
worth), sought a declaration of the "rights and responsibil-
ities of the parties concerning payment of the 1972 real
estate taxes," as well as an order compelling Woolworth to
pay them the amount of such taxes.

The plaintiff's complaint was referred to a master who
filed a report with the Superior Court. In his report the
master found for the plaintiffs. A Superior Court judge
adopted the master's report and entered judgment for the
plaintiffs. The defendant timely filed its notice of appeal.
The Appeals Court affirmed the judgment. 5 Mass. App.
Ct. 770 (1977). As a result of a suggestion made by the Ap-
peals Court in its recript opinion[1] we granted further appel-

---

[1] "The case was properly decided on the authority of *Koshland* v.
*American Woolen Co.* 289 Mass. 308, 311 (1935), and like cases. If there
is to be any change in the rule expounded in those cases, it will have to

late review. We affirm the judgment as entered by the Superior Court judge.

The facts as found by the master are as follows. The defendant has occupied the premises since 1925 under a lease executed in April of that year. The lease contained the following provision: "The Lessee and its successors hereby covenants with the lessors, their heirs, and assigns that it, and its successors shall pay all taxes, (except Federal and State Income Taxes, and Betterment Taxes) Water Rates, Fire and Plate Glass Insurance on said premises, or any part thereof." The plaintiffs or their predecessors in interest entered into four modifications and extensions of the original lease. At all times the tax clause of the lease was operative, and it remained in effect until the tenancy was terminated under the lease on April 30, 1972. Prior to the termination of the lease, the real estate taxes for 1972 had been assessed. See G. L. c. 58, § 3.

It is a well settled principle that clauses in leases by which a tenant covenants to pay real estate taxes require the tenant to pay the taxes for the entire year if the taxes are assessed during the period of tenancy. *Koshland* v. *American Woolen Co.*, 289 Mass. 308, 311 (1935). *Baker* v. *Horan*, 227 Mass. 415, 419-420 (1917). *Welch* v. *Phillips*, 224 Mass. 267 (1916). *Richardson* v. *Gordon*, 188 Mass. 279, 281 (1905). *Paul* v. *Chickering*, 117 Mass. 265 (1875). *Amory* v. *Melvin*, 112 Mass. 83, 87 (1873). *Wilkinson* v. *Libbey*, 1 Allen 375 (1861). Since the taxes for the year were assessed during the period of Woolworth's tenancy, under the tax clause in the lease Woolworth is required to pay the plaintiffs the amount due for taxes for the entire year of 1972.

Woolworth argues, however, that the provisions of the lease requiring proration of the rent on termination of the lease by the option granted under the contract, a lengthy notice period of 360 days before termination, and removal

come from the Legislature or the Supreme Judicial Court." 5 Mass. App. Ct. 770 (1977). We defer to the end of this opinion the issue of a change in this rule.

of effects prior to termination indicate that the parties intended that the obligations of the defendant would cease when its occupancy ended. Thus, Woolworth contends that the tax clause should be interpreted as requiring the tenant to pay only the taxes allocable to its period of occupancy during 1972. The tax clause contained in the lease, however, has a specific, well settled meaning. *Koshland* v. *American Woolen Co., supra. Baker* v. *Horan, supra* at 420. *Welch* v. *Phillips, supra* at 268. *Paul* v. *Chickering, supra* at 267. The parties are bound by this clause, which was not altered by any of the modifications of the contract and which carries a recognized legal interpretation. When a provision with a well established meaning is contained in a contract, that clause, rather than any supposed intentions of the parties gleaned from analysis of other provisions, determines the obligations of the parties.

Woolworth further argues that it is inequitable to interpret the tax clause of the 1925 lease as requiring tenants to pay taxes for the entire year when the taxes have been so increased as to equal almost the amount due for rent. Once again, we note that the clause used in the lease has a well settled meaning. The lease involved in the present case was modified four times, the last time being in 1968, only three years before notice of termination was given. At the time of the modifications the increase in taxes since 1925 must have been apparent. If the defendant had desired to modify the tax clause in the lease, it could have bargained for such a change at the times of these modifications. See *Miller* v. *Wadsworth, Howland & Co.*, 296 Mass. 172 (1936). No such modification was made. When the basis for a claim of unfairness was known to a party to a contract and that party could have taken action to remedy the problem, contractual provisions agreed on by the parties will not be modified.

Woolworth also relies on *May* v. *Rice*, 108 Mass. 150 (1871), to support its contention that it would be inequitable not to interpret the tax clause involved in the present case as having been modified to require payment of the

taxes only for the period during which the defendant oc-
cupied the premises. In *May*, premises were leased for one
year under an oral agreement which required the tenants to
pay the taxes. When the lease expired, the parties agreed
that the tenants might remain at the premises "at the same
rate" as that paid for the previous year and that either party
might terminate the tenancy by giving one month's notice.
The tenants terminated the contract after occupying the
premises for one month under the new agreement. This
court concluded that the tenants were liable only for the
taxes allocable to this month. However, the court based this
conclusion on the fact that the second agreement required
payment "at the same rate" as that paid during the prior
year. *May* v. *Rice, supra* at 152-153. Payment of one
month's rent plus payment of taxes for the entire year would
result in a higher monthly rate than that required under the
first lease. Thus, under the terms of the second agreement,
the taxes were to be apportioned. *Id.* at 153. No such agree-
ment which could be interpreted as calling for a proration
of taxes is present in the lease involved in this action.
Therefore, *May* is not applicable in the circumstances of this
case. Rather, the line of cases discussed *supra,* which
established that clauses obligating tenants to pay taxes re-
quire payment of the amount assessed for the full year,
governs the outcome of this action.

Finally, Woolworth contends that the erosion of the doc-
trine that covenants in leases are independent requires that
the obligations of tenants be measured by occupancy. Wool-
worth argues that this development in the law supports its
position that it is liable only for the taxes allocable to the
period of its occupancy. While there is a developing tenden-
cy to treat some lease covenants as interdependent, no gen-
eral rule that all obligations of tenants are to be measured
by occupancy has evolved. Rather, the courts have focused
their attention on the interdependence of the tenant's duty
to pay rent and the landlord's duty to maintain premises
suitable for the tenant's use. See *Boston Hous. Auth.* v.
*Hemingway,* 363 Mass. 184 (1973); *Dyecraftsmen, Inc.* v.

*Feinberg,* 359 Mass. 485 (1971); *Charles E. Burt, Inc.* v. *Seven Grand Corp.,* 340 Mass. 124 (1959); Restatement (Second) of Property, Landlord and Tenant §§ 5.1-5.5 (1977). The treatment of some lease provisions concerning mutual obligations during tenancy as interdependent furnishes no basis for concluding that a tax provision in a lease should be interpreted as requiring proration of the taxes, particularly when the tenant has specifically contracted to pay the taxes for the entire year.

What we have said disposes of the issues presented in this case. However, in considering the application of the general principle governing interpretation of provisions requiring payment of taxes, we have concluded that, because of changes in the nature and conception of leases, interpreting such clauses as requiring payment only of the portion of taxes allocable to the period of tenancy would now be in accord with the expectations of the contracting parties. See *Tristram's Landing, Inc.* v. *Wait,* 367 Mass. 622, 628 (1975). When tenants, particularly residential tenants, sign a lease they assume that they will be paying charges only for the time during which they occupy the premises. If the lease contains a tax clause, the common understanding of tenants would be that they were obligated to pay the taxes allocable to the period of their occupancy. If the landlord wishes to be paid taxes for the entire year, whether or not the tenant occupies the property for that period, the burden should be on him to require explicitly that the tenant is so obligated.

Provisions requiring tenants to pay taxes have had an unambiguous and long settled interpretation. Such provisions were presumably included in leases in reliance on this interpretation. Therefore, tax clauses contained in leases now in existence will be interpreted in accordance with this long-standing construction. However, for tax clauses contained in leases executed after the date of this opinion, we adopt the following rule. A provision in a lease requiring the tenant to pay taxes will be interpreted as requiring the tenant to pay the amount of taxes allocable to the period covered by the lease. The parties, of course, may agree that

the tenant is required to pay the taxes on the property for
the entire year, whether or not the lease covers that whole
period. However, such an obligation on the part of the ten-
ant must be clearly expressed. This rule is in accord with the
expectations of the parties and places the burden on the
landlord to give clear notice to the tenant if the tenant is to
be obligated to pay taxes for a greater period than he would
otherwise assume.

*Judgment of the Superior Court
affirmed.*