Donald S. POWERS, Plaintiff-Appellant,

v.

UNITED STATES POSTAL SERVICE,
Defendant-Appellee.

No. 81–2421.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1982.

Decided March 2, 1982.

Palmer C. Singleton, Jr., Highland, Ind., for plaintiff-appellant.

Charles B. Miller, Asst. U. S. Atty., R. Lawrence Steele Jr., U. S. Atty., Hammond, Ind., for defendant-appellee.

Before SPRECHER and POSNER, Circuit Judges, and BONSAL, Senior District Judge.*

POSNER, Circuit Judge.

The question we are called upon to decide in this case—one of first impression in this circuit—is whether state law or federal common law is to be used to decide a dispute between the United States Postal Service, as tenant, and a private landlord, concerning the landlord's right to terminate the lease for nonpayment of rent.

The landlord (appellant in this court) is an Indiana man named Powers, and the leased premises are used as a post office in

* Of the Southern District of New York.

Munster, Indiana. The lease, a standard form lease used by the old Post Office Department, was signed in 1964 in Indiana. The lease was for ten years, at an annual rent of $10,200, with an option to the tenant to renew through 1994 at the same rent. Naturally the option has been exercised; inflation unforeseen in 1964 has made the fixed-rent feature of the lease uncommonly advantageous to the tenant, the Postal Service.

In 1979 the Postal Service notified Powers that the post office needed to be painted—at his expense. But the lease is silent on whether the landlord's maintenance obligation includes painting, and Powers refused to paint. The Service then hired someone to do it, at a cost of $1600, and deducted this amount from the rent. Powers then served written notice on the Postal Service that unless it paid the full rent within 10 days he would exercise his rights under Ind.Code § 32–7–1–5 and terminate the lease. When the Service refused either to pay up or to quit the premises, Powers brought this lawsuit, in federal court of Indiana, for the rent due and for ejectment. He based federal jurisdiction on 39 U.S.C. § 409(a), which gives the federal courts, concurrently with the state courts, jurisdiction over suits by or against the Postal Service.

The district court held that the law applicable to Powers' claims was federal common law rather than the law of Indiana, that under federal common law painting is not a part of the landlord's maintenance obligation, and therefore that Powers was entitled to the $1600 in withheld rent. The Postal Service has not appealed this ruling.

The court rejected Powers' claim for ejectment, however. Judging from the footnote which is all that the court wrote on this phase of the case, its holding was based mainly on two unreported federal district court decisions from Pennsylvania, one of which was summarily affirmed by the Third Circuit in an unpublished order. Although it is unclear whether federal common law or Pennsylvania law was applied in those decisions, the court below must have been using them as evidence of what the applicable federal common law is. For there is no dispute that if state law is applicable to this case it is the law of Indiana and not the law of Pennsylvania that applies and the court below had earlier held that federal common law rather than state law was applicable.

This appeal is from the district court's refusal to order ejectment. Powers argues that Indiana rather than federal common law should govern the parties' rights under the lease, even though the tenant is a federal agency, and that under Indiana law he is entitled to eject the Postal Service for having withheld the $1600 from the rent due him. The court below made no findings on Powers' rights under Indiana law and the Postal Service did not brief or argue the question of those rights either in this court or below.

The first issue that we must consider is whether the federal courts have been authorized to create federal common law for application to questions arising under Postal Service leases. There is no federal statute prescribing the rights or duties of parties to leases with the Postal Service, except with regard to wages paid to workers constructing or repairing leased facilities, see 39 U.S.C. § 410(d)(1), which of course has no application here. The jurisdictional statute, 39 U.S.C. § 409(a), is not a promising source of substantive duties either. It confers merely concurrent jurisdiction on the federal courts. If Congress by enacting section 409(a) had wanted the federal courts to apply federal common law, it probably would not have given the state courts concurrent jurisdiction. They are not expert in devising federal common law, and, as we shall see, there is no ready-made body of federal landlord-tenant law lying about that a state court could merely apply, without having to invent. This interpretation of section 409(a) is reinforced by *Peoples Gas, Light & Coke Co. v. United States Postal Service*, 658 F.2d 1182, 1189 (7th Cir. 1981), which holds, albeit in a different context, that section 409(a) is not a source of substantive rights but merely a waiver of the government's sovereign immunity from suit.

■ We believe, however, that the statutes creating the Postal Service, 39 U.S.C. §§ 101 *et seq.*, considered as a whole, empower the federal courts to create substantive principles governing suits by and against the Postal Service in both federal and state court, to the extent that such creation is necessary to carry out the purposes of those statutes. That is the essential teaching of *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), which made clear that *Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), had not extinguished the power of the federal courts to formulate common law but had merely confined that power to cases where there was a substantive federal interest. This is such a case since the interpretation of post office leases could conceivably affect the Postal Service's ability to carry out the mission that Congress has entrusted to it.

■ However, the fact that federal courts have the power to create federal common law applicable to Postal Service leases does not mean that they have to exercise that power. If state law would provide as good or better rules of decision, a federal court can apply state law instead of creating its own rules. This is a frequent choice, especially in real property law, of which landlord-tenant law is a part. Even during the era of rampant federal common law that *Erie* brought to an end, federal courts usually deferred to state law in matters of real property. For example, in *United States v. Fox,* 94 U.S. 315, 320, 24 L.Ed. 192 (1877), the Supreme Court held that state law governed the bequest of real estate to the United States because "the disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated."

It is true that the *Clearfield* opinion contains some broad language (see 318 U.S. at 367, 63 S.Ct. at 575), and *United States v. County of Allegheny,* 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944), even broader language, suggesting that all federal contracts are governed by federal common law. See also *Priebe & Sons, Inc. v.*

*United States,* 332 U.S. 407, 411, 68 S.Ct. 123, 125, 92 L.Ed. 32 (1947) ("It is customary, where Congress has not adopted a different standard, to apply to the construction of government contracts the principles of general contract law"). Although none of these cases involved real estate contracts, their language led the Third Circuit in several early cases to hold that federal common law governed the interpretation of real estate contracts to which the U.S. was a party. See *Girard Trust Co. v. United States,* 149 F.2d 872, 874 (3d Cir. 1945), 161 F.2d 159, 161 (3d Cir. 1947); *American Houses, Inc. v. Schneider,* 211 F.2d 881, 882–83 (3d Cir. 1954). The Court of Claims took the same view in *Brooklyn Waterfront Term. Corp. v. United States,* 90 F.Supp. 943, 948, 117 Ct.Cl. 62 (1950), relying on the *Girard* decisions. The two unreported Pennsylvania district court decisions that the court below cited are the echo of the early Third Circuit cases. They are a faint echo, because they do not cite those cases or discuss the source of the law being applied, which for all that appears may have been the law of Pennsylvania; but a slightly earlier Pennsylvania district court decision, *J. & R. Realty Co. v. United States,* 418 F.Supp. 391 (E.D.Pa.1976), indicates that the district courts in the Third Circuit are, as one would expect, continuing to adhere to *Girard* and *Schneider.*

But the tide of case law is running strongly against the idea that there is a federal common law of real property. See *United States v. Certain Property in Manhattan,* 306 F.2d 439, 444 (2d Cir. 1962), 344 F.2d 142, 144–45 (2d Cir. 1965); *United States v. Williams,* 441 F.2d 637, 643 (5th Cir. 1971); *United States v. Doyle,* 468 F.2d 633, 636 (10th Cir. 1972); *United States v. O'Connell,* 496 F.2d 1329, 1332 (2d Cir. 1974); *United States v. Irby,* 618 F.2d 352, 355 (5th Cir. 1980); *United States v. California,* 655 F.2d 914, 916–17, 919–20 (9th Cir. 1980). This trend has been helped along by a series of Supreme Court decisions. *United States v. Brosnan,* 363 U.S. 237, 241–42, 80 S.Ct. 1108, 1111, 4 L.Ed.2d 1192 (1960), adopted "state law governing divestiture of federal tax liens" in order to avoid "severe dislocation to local property

relationships which would result from ... disregarding state procedures." *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), held the Texas law of coverture applicable to loan contracts of the Small Business Administration. *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 595–96, 93 S.Ct. 2389, 2398, 37 L.Ed.2d 187 (1973), intimated that state real property law should generally govern federal land acquisitions, although discriminatory or hostile state property rules should not. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 740, 99 S.Ct. 1448, 1464, 59 L.Ed.2d 711 (1979), adopted a "readymade body of state law [governing priority of liens arising from federal loan programs] as the federal rule of decision" in the absence of "any concrete reasons for rejecting well-established commercial rules which have proven workable over time." And *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 673, 99 S.Ct. 2529, 2540, 61 L.Ed.2d 153 (1979), held that state law rather than federal common law should determine whether changes in the course of a river affecting riparian land of the federal government are avulsive or accretive because "we see little reason why federal interests should not be treated under the same rules of property that apply to private persons holding property in the same area by virtue of state, rather than federal, law. It is true that States may differ among themselves with respect to the rules that will identify and distinguish between avulsions and accretions, but as long as the applicable standard is applied evenhandedly to particular disputes, we discern no imperative need to develop a general body of federal common law to decide cases such as this, where an interstate boundary is not in dispute."

We could probably derive from the recent decisions a presumption in favor of using state law to resolve disputes under real estate contracts to which the federal government is a party, but we do not have to go so far to decide this case. It is enough to note that no previous case of which we are aware above the district court level has addressed the question what law governs the interpretation of Postal Service leases and that the recent appellate decisions cited above overthrow whatever presumption the early post-*Erie* cases may have created in favor of using federal common law to decide such disputes. We shall therefore examine *de novo* the pros and cons of using federal common law versus state law to decide the rights of the Postal Service under its leases.

To frame the issue as sharply as possible, we shall assume that Indiana law would allow Powers to eject the Postal Service under the circumstances of this case and that federal common law would not. Later we shall have to reconsider the first assumption, however.

One argument in favor of applying federal common law might be that applying state law would increase the cost of the federal program. This argument is superficially applicable to the present case, because if Powers is allowed to terminate the lease the Service will lose the benefit of the low rent fixed in 1964. But the advantage would be transitory. Knowing that they would have fewer rights under federal leases than state law (if applicable) would have given them, Indiana landlords would in the future drive harder bargains with the Postal Service. Concretely, the more difficult a lease is to terminate, the higher will be the rent demanded by the landlord; there will be no net saving to the tenant in the long run. Cf. Coase, *The Problem of Social Cost*, 3 J.L. & Econ. 1 (1961). And even if the Postal Service could somehow gain a permanent advantage by having its leases in Indiana governed by federal common law rather than by state law, this would merely shift some of the cost of postal service from the users of the mails and from the federal taxpayer to Indiana landlords. No net increase in the nation's welfare can be assumed from so random a change in the distribution of the costs of postal service.

Another argument against state law might be that it was not designed to deal with the distinctive characteristics of federal programs. This would be a powerful argument in the case of a contract involving military procurement or other activities not commonly undertaken at the state level. *Priebe & Sons, supra,* which involved a contract under the lend-lease program in

World War II, is a good example. Although some aspects of postal service may be distinctive in this way, there is nothing distinctive about the lease of premises for a local post office. It is no different from the leasing of commercial space by any large nationwide enterprise, such as AT&T or Sears Roebuck, whose leases are of course governed by state rather than federal law.

If a state passed a law intended to discriminate against a federal program, that would be reason enough to apply federal common law in its place; but there is no suggestion of this here. The Supreme Court held in *Lake Misere, supra,* that the same result would follow if state law, though not discriminatory in intent, fell so hard on the federal program that it threatened its effectiveness. See 412 U.S. at 595–97, 93 S.Ct. at 2398–99. And recently the Second Circuit refused to apply state law to certain government leases where the effect would have been to "permit lessors . . . , and indeed [the government] itself, to evade statutory limitations on the procurement process and to frustrate Congress' supervision of that process." *United States v. Bedford Assoc.,* 657 F.2d 1300, 1309 (2d Cir. 1981). But all that is at stake in the present case, if state law is applied, is that the Postal Service may have to pay higher rents for a few local post offices. The Service will not lose its post office in Munster. Powers is happy to have the Postal Service as a tenant—he just wants a rent more in keeping with current price levels. There is not even much danger that the average rent that the Postal Service has to pay for leasing post offices will be higher. Our earlier point that in the long run changes in rent will compensate for changes in other lease terms suggests that the average rent will if anything be lower; more important, there is no reason to expect state landlord-tenant law to be on average less favorable to the interests of the Postal Service than a general federal common law of landlord and tenant would be.

*Clearfield* emphasized the value of the uniformity that is obtained by applying federal common law: "The application of state law . . . would subject the rights and duties of the United States to exceptional uncertainty." 318 U.S. at 367, 63 S.Ct. at 575. This aspect of *Clearfield* has received a drumbeat of criticism. See, e.g., Mishkin, *The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision,* 105 U.Pa.L.Rev. 797, 830–32 (1957); Friendly, *In Praise of Erie—And of the New Federal Common Law,* 39 N.Y.U.L.Rev. 383, 410 (1964); Comment, *Adopting State Law as the Federal Rule of Decision: A Proposed Test,* 43 U.Chi.L.Rev. 823, 839–42 (1976). The Court gave no reason, and none is apparent, why it is better to force businessmen in every state to learn two systems of law, one for their ordinary transactions and one for their dealings with the federal government, than to force the government's lawyers to learn the law of 50 different states. At all events, this aspect of *Clearfield* is rarely mentioned any more in the decisions except to be disparaged, see, e.g., *Wilson, supra,* 442 U.S. at 673, 99 S.Ct. at 2540, and the facts of the present case show why. The Postal Service has regional counsel all over the country. They can learn the real property law of the states in which they operate more easily than the thousands of landlords who someday may have dealings with the Postal Service can learn the federal common law of landlord and tenant along with their local landlord-tenant law.

■ Since we have found no persuasive reason for using federal common law rather than state law to decide the Postal Service's rights under the lease, since considerations of uniformity (really simplicity) of legal obligations seem rather to favor state than federal law, and since in the absence of strong reasons one way or the other we would be inclined to defer to state law merely because federal lawmaking takes place against a background of state law that the federal courts should try to disturb as little as possible, perhaps we need say no more. But a powerful argument against applying federal common law in this case has yet to be mentioned: a federal common law of landlord and tenant does not exist. Cf. *Certain Property in Manhattan, supra,* 306 F.2d at 444. The federal courts could of course create that law, picking and

choosing among existing state laws and proposed reforms in accordance with the recommendations of eminent scholars and practitioners. It is not to be expected that the federal courts would do a very good job of devising a model code of landlord-tenant law, since they have very little experience in landlord-tenant matters; and though eventually some body of law would emerge it would not in all likelihood be a uniform body, because there are twelve federal circuits and the Supreme Court could be expected to intervene only sporadically. In any event, during the protracted transition to settled law the uncertainties attending the rights and obligations of the Postal Service as tenant would be profound, and this would have several effects: the Postal Service's negotiations with prospective landlords would be more elaborate; its leases would be more detailed; and extensive research would be undertaken to predict the mature shape of the emerging federal common law. All of these things would be costly and some of the costs would be passed along to the Postal Service in the form of higher rents. The victory of retaining the lease of the Munster Indiana post office at 1964 rental rates would be a Pyrrhic one indeed.

This discussion shows that we do not have to balance competing federal and state interests in this case after all. The overriding federal interest here is in certainty of right and obligation flowing from conformity to known law; the state interest is in offering its landlords a like certainty. These interests converge in favor of adopting, as the rule of decision to govern disputes under Postal Service leases, state law rather than federal common law.

In some cases there may be doubt which state's law applies, but there is none here; it is the law of Indiana. In other cases, and this is one, there may be doubt what the law of the state is on the point in question. In such a case, the federal court "applying" state law may actually have to make state law—a paradoxical but unavoidable, and because only occasional a tolerable, consequence of our decision to adopt state law rather than to create federal common law.

■ Powers rests his claim to be entitled to eject the Postal Service from the Munster post office on the language of Ind. Code § 32-7-1-5, which provides: "If a tenant refuses or neglects to pay rent when due, ten (10) days' notice to quit shall determine the lease, when not otherwise provided therein or agreed to by the parties, unless such rent be paid at the expiration of said ten (10) days." But the Postal Service did not refuse to pay rent *simpliciter*; rather it offset against the rent due a debt that it thought the landlord owed it. This is a proper procedure under Indiana law. See, e.g., *Sigsbee v. Swathwood*, 419 N.E.2d 789, 798 (Ind.App.1981). Although the Postal Service's claim has been rejected, there is no suggestion that it was made in bad faith; and the amount set off against the rent due under the lease was only a tiny fraction of the total rentals under the lease as renewed ($1600 divided by more than $300,000). In these circumstances a court of equity might hold that the lease was not forfeited, cf. *Blue Ridge Metal Mfg. Co. v. Proctor*, 327 Pa. 424, 428, 194 A. 559, 561 (1937), since otherwise the threat of forfeiture might destroy the practical value of the offset remedy. Powers concedes in his appeal brief that "forfeiture by acts of the parties to a lease because of a breach of a covenant is not favored in the law" of Indiana, a proposition supported by *Owens v. Waggoner*, 115 Ind.App. 43, 55 N.E.2d 335 (1944); and he has pointed us to no case in which forfeiture was decreed on the basis of conduct similar to the Postal Service's here. Krieger & Shurn, *Landlord-Tenant Law: Indiana at the Crossroads*, 10 Ind.L.Rev. 591, 624 (1977), implies that the issue is *res nova*.

We hesitate to decide this issue of Indiana law without the benefit of the district court's views. We therefore remand the case for the district court to decide whether under Indiana law Powers was entitled to terminate the lease.

VACATED AND REMANDED.