**John M. REED, et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civ. A. No. 86–1584–MA.**

United States District Court, D. Massachusetts.

April 24, 1987.

David A. Guberman, Sherin & Lodgen, Boston, Mass., for plaintiffs.

Frederick E. Dashiell, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action brought by the trustees of the Koufman Nominee Trust, which owns certain property leased to the United States Postal Service for use as a post office. The trustees seek to evict the Postal Service from its facility in Athol, Massachusetts, and to recover rent withheld by the Postal Service. The Postal Service claims that it is entitled to withhold the rent to offset the costs it incurred in paint-ing the premises and repairing the roof of the building.

The action was originally brought in the Massachusetts Superior Court and was removed to this Court pursuant to 39 U.S.C. § 409(a). I have jurisdiction over this case, as the Postal Service is sued in its own name, *see* 39 U.S.C. §§ 401(1), 409(a), and the lease at the core of the parties' dispute was signed prior to the enactment of the Contract Disputes Act of 1978. *See* 41 U.S.C. §§ 601(2), 602(a)(1); *Jackson v. United States Postal Serv.*, 799 F.2d 1018, 1022 (5th Cir.1986). The case is now before me on the trustees' motion for summary judgment and the Postal Service's cross-motion for partial summary judgment.

### 1. *Background*

This litigation arises out of a 1962 lease entered into between the Postal Service and the trust's predecessor in interest, the SSC Corporation. The lease provides for a base term of 20 years, a first option term of 10 years, and four successive five-year options after that. Under the lease, the owners of the property are responsible for keeping the building in good repair. While the agreed-upon rent undoubtedly seemed satisfactory to the owners of the property at the time the lease was signed, the inflation of the 1970s made it more difficult for them to pay for the maintenance and repairs out of the rent received for the facility. In recognition of this problem, the Postal Service offered in 1980 to have the owners join a Lease Amendment Program designed to relieve them of certain maintenance costs in exchange for a reduction in the rent. The owners declined to join the program.

Beginning in the 1970s, the Postal Service informed the owners on several occasions that the roof to the building leaked and would have to be repaired. In 1981, the Postal Service also requested that the interior and exterior of the building be repainted. The Postal Service continued to ask for these repairs over the next several years. Although the owners promised to make the repairs and did patch the roof on at least one occasion, the Postal Service

was not satisfied with the attempted repairs. It finally contracted in 1984 and 1985 with third parties to replace the roof and paint the interior of the building. The owners informed the Postal Service that it had no right under the lease to make such repairs and that cancellation of the lease was the Service's exclusive remedy. The Postal Service nonetheless proceeded with these repairs, and then began withholding rent in the amount of $1500 a month to offset the costs it had incurred. In response, the trustees served the Postal Service with several notices to quit the premises and finally instituted a summary process eviction action in state court. The Postal Service removed the action to this Court.

## 2. *Rights Under the Lease*

The trustees have moved for summary judgment on the ground that Massachusetts law does not permit the lessee of nonresidential property to set off the cost of repairs from the rent owed. Under this reasoning, the Postal Service had no legal right to withhold the rent and has no defense to the eviction action or the proceeding to recover the unpaid rent. The Postal Service opposes this motion and has filed its own motion for partial summary judgment on the ground that federal common law affords it the right to repair and deduct.

The trustees claim that the owners' duty to repair and the Postal Service's remedies for any supposed breaches are limited to those delineated in paragraphs 7 and 10(c) of the lease agreement:

7. The Lessor shall, unless herein specified to the contrary maintain the demised premises, including the building ... in good repair and tenantable condition, except in case of damage arising from the act or the negligence of the Government's agents or employees....
....

10(c). *If any building or any part of it on the leased property becomes unfit for use for the purposes leased,* the lessor shall put the same in a satisfactory condition, as determined by the Post Office Department, for the purposes leased.

If the lessor does not do so with reasonable diligence, *the Post Office Department in its discretion may cancel the lease. For any period said building or any part thereof is unfit for the purposes leased, the rent shall be abated in proportion to the area determined by the Post Office Department to have been rendered unavailable* to the Post Office Department by reason of such condition.

(emphasis supplied).

There is no dispute that the Postal Service did not avail itself of the stated remedies of lease cancellation or rent abatement for any unfit areas. The parties do dispute, however, what additional common law rights are available to the Postal Service. The trustees argue that because landlord-tenant relations are implicated, state law should govern the rights of the parties under this lease. They further argue that Massachusetts law does not permit the lessee of nonresidential property to repair the premises and deduct the costs from the rent. The Postal Service claims that because the lease is with the Postal Service, federal common law, which allows setoffs, should be applied. It claims further that even if Massachusetts law were to apply, the trustees' failure to maintain the premises excused the Service from its obligation to pay rent, as the two agreements are dependent.

I am thus faced with two questions. (1) Does state law or federal common law govern the landlord's right to terminate this nonresidential lease for nonpayment of rent? (2) Does the applicable law allow the lessee to repair the premises and deduct those costs from the rent payments?

### (a) *Choice of Law*

Neither party disputes that the federal courts have the power to create a federal common law applicable to Postal Service leases. As the Supreme Court implied in *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943), its ruling in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), did not extinguish the

power of the federal courts to formulate common law. It instead merely confined that power to cases where there are substantive federal interests. *See Powers v. United States Postal Serv.*, 671 F.2d 1041, 1043 (7th Cir.1982).

The parties do dispute whether I should exercise that power in this case. If state law provides as good or better rules of decision, I can apply state law instead of creating my own rules to govern the parties' rights. Courts frequently choose to apply state law when real property rules, of which landlord-tenant law is a part, are implicated. *Powers*, 671 F.2d at 1043.

■ Two courts of appeals have addressed the precise question of whether state law or federal common law should be applied to determine the rights of parties to Postal Service leases. These two courts have come to opposite conclusions. In the case mentioned above, *Powers*, Judge Posner of the Court of Appeals for the Seventh Circuit decided that such leases should be governed by state law. He noted that "the tide of case law is running strongly against the idea that there is a federal common law of real property." 671 F.2d at 1043. While state law might not be designed to deal with the distinctive characteristics of certain federal programs, "there is nothing distinctive about the lease of premises for a local post office. It is no different from the leasing of commercial space by any large nationwide enterprise, such as AT & T or Sears Roebuck, whose leases are of course governed by state rather than federal law." *Id.* at 1044–45. Moreover, there is no suggestion that state law is intended to or would discriminate against a federal program, and the Postal Service's regional counsel can learn the real property law of the states in which they operate more easily than the thousands of landlords dealing with the Postal Service can learn the federal common law of landlord and tenant. *Id.* at 1045. Perhaps most importantly of all, state law should be applied because a federal common law of landlord and tenant does not exist. While federal courts could create that law, "[i]t is not to be expected that the federal courts would do a very

good job ... since they have very little experience in landlord-tenant matters; and though eventually some body of law would emerge it would not in all likelihood be a uniform body, because there are twelve federal circuits and the Supreme Court could be expected to intervene only sporadically." *Id.* at 1046.

Although aware of the *Powers* decision, the Court of Appeals for the Federal Circuit in *Forman v. United States*, 767 F.2d 875 (Fed.Cir.1985), decided to apply federal law in construing a Postal Service lease. Its predecessor courts had decided that federal law controlled government leases, and the panel in *Forman* felt that such a decision was binding upon it unless changed by the court *en banc*. *Id.* at 879. The panel stated that it had no occasion to ask the court *en banc* to reconsider which law to apply since it felt that the 1960s-era lease was adopted for reasons peculiar to the Postal Service. Federal law thus seemed appropriate at least for that kind of specialized lease. *Id.* at 879–80.

I find the reasoning in *Powers* to be more persuasive than that in *Forman*. While the court in *Forman* decided that the 1960s-era lease was "specialized" and presumably implicated some governmental interest, that court did not articulate what that interest was or how the lease of space for a post office differed from the lease of space by commercial entities. Judge Posner felt that the lease involved in *Powers*, which was also a 1960s-era lease, had no distinctive federal characteristics. *Powers*, 671 F.2d at 1044–45. The court in *Forman* noted that a uniform body of federal landlord-tenant law would be likely to emerge because most cases involving the United States as a tenant would go on appeal to the Federal Circuit. *Forman*, 767 F.2d at 880 n. 6. However, the twelve regional circuits will continue to receive appeals involving postal leases, *see* 39 U.S.C. § 409(a), and those courts would each be faced with the task of creating federal landlord-tenant law where none exists at the moment. I decide that it is appropriate in this case to apply state law in construing the rights of the parties under the lease.

(b) *Massachusetts Law Governing Nonresidential Leases*

While a tenant in Massachusetts residential property is allowed to repair the premises of his dwelling and deduct the cost from his rent, *see* M.G.L. c. 111, § 127L, as amended by St.1983, c. 84, § 7, the Massachusetts statutes are silent as to whether tenants leasing nonresidential property have the same right. I must look to the Massachusetts common law to determine whether the Postal Service has a defense to the eviction action.

Under the earlier Massachusetts cases, covenants in leases were generally considered to be independent in the absence of clear indications to the contrary. *Barry v. Frankini*, 287 Mass. 196, 201, 191 N.E. 651 (1934); *Sniger v. Fentin*, 4 Mass.App.Ct. 215, 217, 344 N.E.2d 420 (1976). If the covenants in the lease were dependent, nonperformance of the lessor's covenants would excuse performance of the lessee's covenants. *Barry*, 287 Mass. at 200, 191 N.E.2d 651. If the covenants were independent, the lessee would be relieved from performance of his covenants only by actual or constructive eviction. *Barry*, 287 Mass. at 201, 191 N.E.2d 651. Where the landlord was obligated to make all repairs and he failed to do so, the tenant's remedy would be limited to either bringing an action for damages or making the repairs himself and suing the landlord to recover the cost of the repairs. *See DiMarzo v. S. & P. Realty Corp.*, 364 Mass. 510, 513, 306 N.E.2d 432 (1974); *Grennan v. Murray-Miller Co.*, 244 Mass. 336, 339, 138 N.E. 591 (1923). The tenant had no right to make the repairs and then withhold rent to offset the costs. He could withhold rent only if the landlord's breach of his covenant to repair amounted to a constructive eviction and the tenant actually abandoned the premises. *Stone v. Sullivan*, 300 Mass. 450, 455, 15 N.E.2d 476 (1938).

All of these rules were substantially changed in the residential lease context by a number of statutes which enabled a tenant to repair and deduct or withhold rent to enforce the state sanitary code. *See* M.G.L. c. 111, § 127L; M.G.L. c. 239, 8A, as amended by St.1981, c. 133. In *Boston Hous. Auth. v. Hemingway*, 363 Mass. 184, 293 N.E.2d 831 (1973), the Supreme Judicial Court further eroded the concept of the independent covenants rule in the residential lease context. The court rejected the common law conception of the lease as a mere property transaction and held that the tenant's covenant to pay rent is dependent on the landlord's implied warranty of habitability. The result of this new rule was that the tenant did not need to rely on a constructive eviction defense to justify his decision to stop paying rent. *See Hemingway*, 363 Mass. at 199–200, 293 N.E.2d 831.

Neither these statutes nor *Hemingway* deal with commercial or other nonresidential leases. Yet the modern case law recognizes that the rationale behind the decision in *Hemingway* applies with equal force to commercial leases. In *Great Atl. & Pacific Tea Co. v. Yanofsky*, 380 Mass. 326, 332, 403 N.E.2d 370 (1980), the court determined what damages a tenant under a commercial lease could receive as a result of the landlord's failure to make repairs. In expanding the landlord's liability to include an implied agreement to indemnify, the court pointed out the decline of "the concept that a lease was to be considered as purely a conveyance of property." *Id.* at 332, 403 N.E.2d 370.

While the *Hemingway* court's rejection of the concept of residential leases as mere property transactions led it to explicitly declare that the obligations to pay rent and to repair are interdependent, the *Yanofsky* court did not have to consider the interdependency of these obligations in the commercial lease context. However, in construing obligations under a commercial lease, the Massachusetts court has indicated in another case that the duties to pay rent and to repair are dependent. In *Erhard v. F.W. Woolworth Co.*, 374 Mass. 352, 356, 372 N.E.2d 1277 (1978), the court stated that "there is a developing tendency to treat some lease covenants as interdependent.... [T]he courts have focused their attention on the interdependence of the tenant's duty to pay rent and the landlord's duty to maintain premises suitable

for the tenant's use." *See Danis v. Bridge Enter., Inc.,* 8 Mass.App.Ct. 930, 931, 397 N.E.2d 326 (1979) (while court need not determine whether covenants in commercial lease in issue are interdependent, court recognizes line of cases focusing on interdependence of certain covenants in commercial leases).

■ The *Erhard* court's explicit statement about the interdependence of the tenant's duty to pay rent and the landlord's duty to maintain premises suitable for the tenant's use leads me to conclude that the Postal Service is entitled to withhold rent if the owners of the post office facility breach their duty to repair.[1] This conclusion is bolstered by one of the provisions in the parties' Agreement to Lease, whose terms are incorporated into the actual lease. That provision states that "[t]he undersigned further agree(s) *in consideration of the aforesaid rental* to maintain the premises and items furnished in this agreement in good repair and proper condition during the continuance of the lease." (emphasis supplied). As the landlord's duty to repair is made in consideration of the tenant's rent payments, this provision indicates that the parties' duties to pay rent and to repair are interdependent.

■ Although I have determined that the Postal Service may defend the eviction action by asserting the owners' failure to repair, further factual development is necessary before I can determine whether the plaintiffs breached their maintenance covenant and whether the Postal Service's repairs were necessary or reasonable. In accordance with the above, I deny the trustees' motion for summary judgment. Although I decide that state law applies, I grant the Postal Service's motion for partial summary judgment insofar as it seeks a declaration that it has the right to make necessary repairs and set off the costs by

withholding rent. I await submissions from the parties on the issues of whether the repairs were necessary or reasonable.

SO ORDERED.

---

1. The trustees point to certain pronouncements about Massachusetts landlord-tenant law made by the Bankruptcy Court in *In re J.A.G., Inc.,* 7 B.R. 624, 627–28 (Bankr.D.Mass.1980) and *In re Players' Pub, Inc.,* 45 B.R. 387, 393 (Bankr.D. Mass.1985), which indicate that covenants in commercial leases are independent and the tenant has no right to withhold rent absent evic-

tion. However, those cases do not deal with the landlord's duty to repair, which the *Erhard* court has said is interdependent with the tenant's duty to pay rent. Nor do those cases acknowledge or discuss the *Erhard* case. I decline to follow the Bankruptcy Court's decisions for those reasons.