In re TINY'S CAFE, INC., Debtor.

No. 04–45706(JBR).

United States Bankruptcy Court,
D. Massachusetts.

Jan. 12, 2005.

John A. Burdick, Jr., John A. Burdick, Jr., Worcester, MA, for Tiny's Cafe, Inc., Debtor.

Howard B. D'Amico, Howard B. D'Amico, P.C., Worcester, MA, for Stephen F. Cranska, Interested Party.

### MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court on Tiny's Cafe, Inc.'s Motion to Suspend Rent Obligation [Docket # 7] and Motion of Stephen Cranska for Relief from Stay [Docket # 15]. The Court held an evidentiary hearing and took these matters under advisement. The parties were given additional time to submit memoranda of law. Based on the record before the Court, the Court makes the following findings of fact and rulings of law pursuant to Fed. R. Bankr.P. 7052.

### I. BACKGROUND

On April 25, 2002 Tiny's Cafe, Inc. ("Debtor") and Stephen Cranska ("Cranska") entered into a commercial lease ("Lease") for the premises located at 314 Main Street, Oxford, Massachusetts ("Premises"). *Agreement of Lease, Agreed Exhibit A.* At all relevant times the Premises was owned by Cranska and occupied by the Debtor. Under the Lease, Debtor was obligated to pay rent monthly in the amount of $2000. *Agreement of Lease Section 3(A), Agreed Exhibit A.*[1] Additionally, the parties agreed that Cranska would be responsible for all maintenance and repairs to the roof. *Agreement of Lease Section 4(J), Agreed Exhibit A.* Section 4(J) of the Lease details:

> The Landlord will be responsible for the roof repair and painting of the exterior of the building. If the landlord, for whatever reason, fails, to the tenant's satisfaction, to repair the roof, or paint the exterior of the building, such failure shall not be grounds for the tenant to stop paying rent. Tenant's sole remedy shall be via an independent action to enforce landlord's obligations to repair the roof and/or pay the rent. Under all such circumstances, tenant will remain obligated to continue to timely pay the rent.

---

1. The Lease has eighteen numbered sections (1–2 and 4–19). The section of the Lease titled "Rental" was not given a number, presumably by mistake, while it was divided into lettered subsections. The Court will refer to this section as Section 3, as it falls between Sections 2 and 4.

The Debtor testifies that it received notice from the Town of Oxford to cease and desist its business operations in July, 2004.[2] Debtor did not pay rent in July 2004. Shortly thereafter, Debtor received a Notice of Termination of Lease due to non-payment of rent in accordance with the Lease. *Notice of Termination, Agreed Exhibit B.* In the weeks following, Cranska sent Debtor a Notice of Obligation to Vacate Premises. *Notice to Vacate, Agreed Exhibit C.* On October 8, 2004 Debtor filed for Chapter 11 in this Court.

Debtor claims that Cranska repeatedly failed to fulfill his requirement to repair the roof. Debtor further asserts that it experienced chronic problems with the Premises as of the inception of the Lease and made numerous requests to Cranska to repair the roof, requests which went largely unaddressed.[3] Debtor states that it spent in excess of $14,000 on repairs directly necessitated by Cranska's refusal to repair the Premises, an amount which far exceeds the $2000 it withheld on its July, 2004 rent. For these reasons, Debtor argues that it was entitled to withhold rent, termination of the Lease by Cranska was not lawful, and no cause exists to justify Cranska's motion for relief from stay.

Cranska claims that the Lease was properly and completely terminated prior to Debtor's Chapter 11 filing and that Debtor currently has no rights under the Lease. Cranska neither refutes nor denies any evidence presented by Debtor and offers no witnesses. His argument rests solely on the language of the Lease, specifically Section 4(J).

## II. DISCUSSION

 Under Sections 362 and 541 of the Bankruptcy Code, a lease that has been terminated prior to the filing of bankruptcy is not property of the estate, and is thus not protected by the automatic stay. *See* 11 U.S.C. §§ 362(b)(10), 541(b)(2). Interpretations of a lease are questions of law which depend upon applicable state law. *In re T.A.C. Group, Inc.,* 294 B.R. 199, 202 (Bankr.D.Mass.2003) *citing In re 29 Newbury Street, Inc.,* 75 B.R. 650 (Bankr.D.Mass.1987). The relevant law in the present matter is M.G.L. ch. 186, § 11A. Section 11A states:

Upon the neglect or refusal by the tenant to pay the rent due under a written lease of premises for other than dwelling purposes, the landlord shall be entitled to terminate the lease either (i) in accordance with the provisions of the lease or (ii) in the absence of such lease provisions, by at least fourteen days notice to quit, given in writing to the tenant. If a landlord terminates the lease by at least fourteen days notice pursuant to clause (ii) of the preceding sentence, the tenant shall be entitled to cure on or before the day the answer is due in any action by the landlord to recover possession of the premises, by paying or tendering to the landlord or to his attorney all rent then

2. In Debtor's Motion to Suspend Rent Obligation [Docket #7] Debtor states that: "On July 27, 2004, the Debtor received notice from the Town of Oxford that it was to cease and desist from conducting any more business on the premises due to the condition of the structure and Cranska's failure to make repairs." This statement was not denied in any sense in Cranska's Opposition to Debtor's Motion to Suspend Rent Obligation [Docket #13]. In Debtor's Memorandum of Law in Opposition to Stephen Cranska's Motion for Relief from Stay [Docket #39] Debtor states: "the condition of the premises deteriorated to the point that the Town of Oxford threatened to close the premises."

3. Debtor did testify that in the Spring of 2004 Cranska once sent somebody to do some patchwork on the roof, which did not improve the condition at all.

due, with interest and costs of such action. The rights to cure provided herein, shall apply only to termination pursuant to clause (ii) and shall not apply to termination in accordance with the provisions of the lease.

■ The central issue is whether Debtor is justified in withholding rent, whereby non-payment can be categorized as something distinct from the "neglect or refusal by the tenant to pay the rent under a written lease" language in M.G.L. ch. 186, § 11A. If so, Cranska's termination will not be recognized by the Court and a finding that the Lease was in existence at the time of the Chapter 11 filing will be warranted.

### A. The Rule of Mutually Dependent Covenants

■ Massachusetts Courts have historically declined to extend to parties to a commercial lease those protections available to parties to residential leases (warranty of habitability, covenant of quiet enjoyment, self help, etc.). *See Chausse v. Coz,* 405 Mass. 264, 540 N.E.2d 667 (1989); *Young v. Garwacki,* 380 Mass. 162, 402 N.E.2d 1045 (1980); *Agustynowicz v. Bradley,* 25 Mass.App.Ct. 405, 519 N.E.2d 599 (1988); *Brighetti v. Consolidated Rail,* 20 Mass.App.Ct. 192, 479 N.E.2d 708 (1985). In *Wesson v. Leone Enterprises, Inc.,* 437 Mass. 708, 774 N.E.2d 611 (2002), however, the Supreme Judicial Court abandoned the common-law rule of independent covenants in commercial leases in favor of the rule of "mutually dependent covenants." While the court did not adopt an implied warranty of fitness or habitability that mirrors common law principles in residential leases, the rule of mutually dependent covenants serves to provide similar protection to parties in the commercial setting. The specific rule of mutually dependent covenants is as follows:

Except to the extent parties to a lease validly agree otherwise, if the landlord fails to perform a valid promise contained in the lease to do, or to refrain from doing, something ... and as a consequence thereof, the tenant is deprived of a significant inducement to the making of the lease, and if the landlord does not perform his promise with in a reasonable period of time after being requested to do so, the tenant may terminate the lease.

*Wesson,* 437 Mass. at 720, 774 N.E.2d at 621, *citing* Restatement (Second) of Property (Landlord and Tenant) § 7.1 (1977).

Section 4(J) of the Lease clearly imposes on Cranska a duty to maintain and repair the roof. The Debtor presents uncontroverted evidence demonstrating that the building was so poorly maintained that leaks in the roof created puddles in the interior of the structure and ceiling tiles were collapsing onto the floor. *Pictures of Premises, Agreed Exhibit D.* Debtor gives undisputed testimony that on one occasion, a customer fell through the floor of the bathroom and that such structural deficiencies, not limited to the floor in the bathroom, hurt its business. Debtor's claims as to the condition of the Premises and repeated notice given to Cranska are supported by a July, 2004 letter. *Debtor's Letter to Cranska, Agreed Exhibit E.* The Debtor demonstrates by a preponderance of the evidence that Cranska had notice and failed to perform his duty to repair and maintain the roof.

Uncontested testimony proffered by the Debtor also establishes that Cranska's promise to maintain and repair the roof was a significant inducement to the Debtor to enter into the lease. That Section 4(J) of the Lease so plainly allocates this responsibility to Cranska, when there was a history of roofing problems prior to the singing of the Lease, supports this notion.

Additionally, Cranska admits that there was a level of mistrust between the parties prior to the signing of the Lease. *Creditor's Memorandum of Law* ¶ 16 (Jan. 5, 2005). Debtor established at trial that it viewed Section 4(J) of the Lease as a way of insuring it against the parties' level of distrust and that it had reason to believe Cranska would follow through with this promise. The Court can infer that Debtor would not have signed the Lease if it had knowledge that Cranska's breach of duty would leave the Premises unfit for the operation of her business. The Court finds that Cranska's covenant to repair and maintain the roof was a significant inducement to the tenant's entering the Lease in the first place.

## B. The Covenant of Good Faith and Fair Dealing

Cranska adamantly argues that Section 4(J) of the Lease should be considered an independent covenant between the parties. Similarly, Cranska suggests that the wording falls into the "except to the extent parities to a lease validly agree otherwise" exception to the rule of mutually dependent covenants. This Court finds this suggestion unpersuasive.

To interpret the language of Section 4(J) of the Lease to mean that Debtor must continue to pay rent even when Cranska's failure to repair leaves the Premises unfit for the purposes in which the contract was entered is fundamentally unfair. The Court will not permit Cranska to reap an unfair benefit from a clause of the Lease that requires Debtor to pay rent, indefinitely, while he refuses to fulfill his bargained for duty. As such, the Court finds that Cranska breached the covenant of good faith and fair dealing implicit in every contract in this jurisdiction and will not reward such behavior. *See* M.G.L. ch. 93A § 11; *See also Anthony's Pier Four, Inc. v. HBC Associates,* 411 Mass. 451, 471–76, 583 N.E.2d 806, 820–22 (1991) (Conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party is a breach of the covenant of good faith and fair dealing implicit in every contract between parties).

## C. Rent Abatement

In *Wesson* the Massachusetts Supreme Judicial Court held that under Massachusetts law, a commercial tenant may be excused from a lease in which the landlord breaches his duty to maintain the roof after receiving adequate notice. *Wesson,* 437 Mass. at 722, 774 N.E.2d at 622. Similarly, this Court finds that Cranska's failure to perform his covenant to maintain the roof entitled Debtor to withhold her July, 2004 rental payment. Although the Lease provides that the Debtor is to continue paying rent if Cranska fails to repair and maintain the roof to its satisfaction, the Lease is silent with respect to Debtor's obligation to pay rent should Cranska fail to repair and maintain the roof so that the Debtor cannot operate its business. Enforcing Debtor's obligation to pay rent in this situation would offend both the rule of mutually dependent covenants and fundamental notions of fairness. Cranska did not fail some ambiguously defined, subjective test of the Debtor, but failed to maintain the Premises to the satisfaction of the municipality. Furthermore, even absent any action or threats by the Town of Oxford to close down Tiny's Cafe, Debtor was justified in withholding rent.

The issue of whether or not Massachusetts law permits a commercial tenant to repair the premises and deduct the costs of such repair is addressed in *Reed v. United States Postal Service,* 660 F.Supp. 178 (D.Mass.1987) The *Reed* court held that in a commercial lease, the duties to

pay rent and repair are dependent. *Id.* at 182 (Finding that the United States Postal Service has a right to withhold rent when landlord failed to repair roof as agreed in the lease). This concept was further articulated in *Burrage v. Mintz,* 4 Mass. L. Rep. 238 (August 3, 1995), 1995 WL 1146830, 1995 Mass.Super. LEXIS 433. The *Burrage* court mentions in *dicta* that the covenant to pay rent does not exist in isolation, but is dependent on the landlord's covenant to supply certain services. *Id.* at *6–7, 1995 Mass.Super. LEXIS 433 at *23. These cases, along with *Wesson,* establish that Massachusetts law no longer views a tenant's covenant to pay rent as independent from a landlord's covenant to repair.

### D. Policy Considerations

In his closing argument Cranska's Counsel conceded both that there are problems with the Premises and that, at a certain point, the obligation to pay rent is not absolute. Indeed, "a landlord's failure to provide a service that is essential to the use and enjoyment of the demised premises may qualify as constructive eviction." *Wesson,* 437 Mass. at 714, 774 N.E.2d at 616. Similarly, conduct which makes the premises "untenable for the purposes for which they were used" also constitutes constructive eviction. *Id.* "[A] Tenant may raise constructive eviction as a defense to an action to recover rent." *Id.* The facts of this case warrant a finding that this point was crossed whereby the tenant was no longer required to pay rent.

This court will not allow Cranska to reap an unfair benefit from his complete and continual disregard to the obligations assigned to him by the terms of the Lease. Because Debtor's withholding of rent was lawful, Cranska's purported termination of the Lease pre-petition is invalid.

### III. CONCLUSION

For the reason stated above, Debtor's Motion to Suspend Rent is GRANTED in accordance with the accompanying order and Stephen Cranska's Motion for Relief from Stay is DENIED.

Separate orders will issue.